IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KENNETH DEYAPP, as parent
and next friend of CRYSTAL DeYAPP,
                Plaintiff,

vs.                No. _____

**JURY TRIAL REQUESTED**

FARMINGTON POLICE OFFICER TAFT TRACY,
FARMINTON POLICE CHIEF MARK McCLOSKEY,
and CITY OF FARMINGTON,

                Defendants.

## COMPLAINT FOR DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS AND SUPPLEMENTAL STATE LAW CLAIMS

Plaintiff, Kenneth DeYapp, as parent and next friend of Crystal DeYapp, by and through their counsel, Joe M. Romero, Jr., and brings the following causes of action against Defendants pursuant to 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, NMSA 1978 § 41-4-1, *et seq.*:

**PARTIES**

1. All of the parties reside or do business in New Mexico and the acts complained of occurred exclusively within New Mexico.

2. Plaintiff Crystal DeYapp is now and at all times material hereto has been a resident of San Juan County, New Mexico. At the time of the acts described herein, Crystal DeYapp was a sixteen-year-old high school student. She lives at home with her parents, including her father and next friend Kenneth DeYapp.

3. Defendant Taft Tracy (hereinafter referred to as "Tracy") was, at all times material hereto, a resident of San Juan County, New Mexico. At the time of the incidents

complained of herein, Tracy was a full-time, salaried law enforcement officer and public employee as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978 § 41-4-3(D) and (F)(2).

4. At all times material hereto, Tracy was employed by Defendant City of Farmington, New Mexico (hereinafter referred to as "Farmington"). At all times material hereto, Defendant Tracy was acting under color of law and within the course and scope of his duties as a Farmington police officer. In connection with Plaintiff's § 1983 claims, Defendant Tracy is sued solely in his personal capacity.

5. Defendant Mark McCloskey (hereinafter referred to as "McCloskey") is now and at all times material hereto has been a resident of San Juan County, New Mexico. At the time of the incidents complained of herein, McCloskey was a full-time, salaried law enforcement officer and public employee as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978 § 41-4-3 (D) and (F)(2). At the time of the incidents complained of herein, defendant McCloskey was the Chief of the Farmington Police Department and was the supervisor of Tracy. At all times material hereto, he acted under color or law and within the course and scope of his duties as a Farmington police officer. In connection with Plaintiffs' § 1983 claims, Defendant McCloskey is sued in his official, as the final policy and decision-making authority regarding law enforcement matters, and his personal capacities as provided below.

6. Farmington is an incorporated municipality, a body politic, and a municipal corporation under the laws of the State of New Mexico. It is also a governmental entity and local public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978 § 41-4-3(B) and (C). As such, it may sue or be sued in its name, and it has the authority to appoint the chief of the Farmington Police Department, to employ police officers and to delegate to the chief

final policy and decision-making authority regarding law enforcement matters. At all times material hereto, Farmington was the employer of McCloskey and Tracy. With regard to the § 1983 claims put forth herein, Farmington acted through its employees and agents, Defendants McCloskey and Tracy, each of whom were or are law enforcement officers within the meaning of § 41-4-12, *et seq.*, of the New Mexico Tort Claims Act.

## JURISDICTION AND VENUE

7. The Court has subject matter and personal jurisdiction and venue is proper. All of the material acts and/or omissions to act complained of herein occurred in San Juan County, New Mexico.

8. This Court has original jurisdiction over Plaintiff's federal claims pursuant to Title 28 U.S.C. § 1331 and § 1343 (a)(3) and (4) and has supplemental jurisdiction over Plaintiff's state law claims pursuant to Title 28 U.S.C. § 1367(a).

## FACTS COMMON TO ALL CAUSES OF ACTION

9. On the evening of July 17, 2001, three Farmington area youngsters went for a drive. These kids were 19-year-old Junior Juarez, 16-year-old Crystal DeYapp, and 16-year-old Grisel Avila. They were unarmed. They are not members of any gang. They were not drinking alcohol or using drugs. Junior was driving a truck he had just purchased. As they drove westbound on Main Street, near the general area of Main and 30th Street, where various car lots or car dealerships are located, Junior slowed down in the right hand or slow lane of Main Street and proceeded to travel at a slow pace to allow his passengers the opportunity to better observe the cars being sold from the car lots located in this area.

10. While they were driving, a car driven by a person later identified as Ronald Foote and his female passenger pulled up alongside Junior's truck. Apparently upset because Junior

3

was driving slowly, Foote pulled alongside Junior, in the center lane of Main, and both Foote and his female passenger started cussing and shouting at Junior. The female passenger cussed at them and directed an obscene gesture toward Junior with her middle finger. Junior and his passengers responded with nervous laughter and continued driving.

11. At the next intersection, Main and Hannon, near a Kentucky Fried Chicken restaurant, both vehicles came to a stop. Apparently still upset, Mr. Foote got out of his car, walked to Junior's door and challenged him to a fight. Being much smaller in stature than Mr. Foote and fearing that Mr. Foote was armed, Junior refused to fight. Foote got back into his car only after being talked into doing so by his female passenger.

12. After this confrontation, Junior passed Foote's car and turned right onto 20th Street. Juarez then drove into a Sonic restaurant to eat. As he and his passengers were about to order their food, Grisel Avila saw Foote walking toward Junior's truck. Apparently, Foote had followed them to the Sonic to continue to harass Junior and his passengers. To avoid a confrontation, Junior did not wait for Foote to walk up to his car and drove out of the Sonic restaurant.

13. They decided to go home. First, Junior took Grisel Avila home. Avila resides at 407 Taylor Drive. As they were driving south on 20th Street, Crystal asked Junior to stop at the Mustang gas station so she could use the bathroom. Both Crystal and Junior got out of the truck and went inside the gas station. While Crystal and Junior were at the Mustang, two groups of kids began fighting. The fight spilled over to the area where Junior's truck was parked. At this point, Junior became involved in a fight, but only to keep people from damaging his truck and to leave the area of the fight.

14. During the altercation, as Junior was pushing people away from his truck, he told Crystal to get in the truck so they could leave the area. As they got into the truck to leave, they both heard a loud pop on the passenger side of the truck. Both thought it was a bottle striking the truck. The loud pop only heightened the sense of danger and the threat he felt for his safety and that of his girlfriend.

15. Upon information and belief, Farmington Police Officer Taft Tracy and Foote together walked to the scene where the fight was still ongoing and Junior was attempting to drive out of the parking lot. Foote had apparently seen Junior pull into the Mustang and, consistent with his aggressive actions earlier in the evening at the intersection and at the Sonic, followed Junior into the Mustang to provoke another confrontation. The unrelated fight involving the two groups of kids apparently delayed his harassment of Junior.

16. As he was attempting to drive away, Foote inexplicitly stepped in front of Junior's vehicle as Junior was slowly driving away from the scene of the confrontation.

17. As he was trying to drive away, neither Junior nor Crystal saw a police officer or heard a police officer telling them to stop. They heard others yelling – that is, those individuals belonging to the two groups that were fighting each other in the parking lot. Before Crystal and Junior were shot, their attention was focused to the right side of the truck where someone had just thrown what they believed to be a bottle at the truck. The next thing they knew was that they had both been shot. Officer Tracy discharged his firearm into Junior's truck as he was standing to Junior's left, at and slightly behind the driver's door.

18. The bullet entered Junior's upper left jaw and exited just underneath his lower right jaw, damaging his vocal cords and severing part of his tongue, but miraculously not striking any vital organ or artery. After exiting Junior's lower right jaw, the bullet struck and lodged in

Crystal DeYapp's left calf. Doctors have been unable to remove the bullet out of concern that removing the bullet will cause more damage to the nerves and bone in Crystal's calf.

19. At the time of the shooting of Crystal DeYapp and Juarez, there were no criminal charges pending against either of them, no warrants for their arrest and no probable cause to believe that a violation of any law.

20. The conduct of Tracy was unreasonable and without any legal justification. Tracy did not act in self-defense or in defense of another. Tracy did not fire a warning shot or engage in any conduct short of deadly force prior to discharging his firearm at Junior Juarez's head.

21. The conduct of Tracy, described above, was a direct and proximate cause of the damages suffered by Crystal DeYapp, as described herein.

## FIRST CAUSE OF ACTION
### Claims Against Tracy Under 42 U.S.C. § 1983: Violations of the Fourth Amendment
### Excessive And Unnecessary Use of Force

22. The contents of paragraphs 1 through 21, above, are incorporated hereinto by reference as if set forth in full.

23. Tracy had a duty to refrain from violating Plaintiff's constitutional rights.

24. The conduct of Tracy, described above, constituted unreasonable, unnecessary and unjustified use of excessive force and deprived Crystal DeYapp of her rights to be free from unreasonable and illegal seizures of the person as well as to be free from the application of unreasonable and excessive force in connection with said seizures and use of force under the Fourth Amendment to the United States Constitution. Tracy's actions were wanton, willful, and callously indifferent to the rights of the public, including Plaintiff.

25. The conduct of Tracy, described above, was a direct and proximate cause of the deprivation of Plaintiff Crystal DeYapp's Fourth Amendment rights as well as the resultant

injures and damages to Plaintiff, described below. The rights in question were clearly established prior to July 17, 2001, and any reasonable law enforcement officer would have been aware that the conduct of Defendants, as described herein, would be a violation of Plaintiff's constitutional rights.

## SECOND CAUSE OF ACTION
### Claims against Chief McCloskey for Supervisory Liability under 42 U.S.C. § 1983

26. The contents of paragraphs 1 through 25, above, are incorporated hereinto by reference as if set forth in full.

27. Defendant Mark McCloskey (hereinafter referred to as "McCloskey"), as Chief of the Farmington Police Department, had a duty to exercise due care in the supervision of officers of the Farmington Police Department, including Tracy. In addition, McCloskey had a duty to properly screen, hire, train, monitor, supervise, and/or discipline subordinate and supervisory law enforcement employees of the Farmington Police Department, including Tracy. As part of that responsibility, McCloskey had a duty to:

    a. Conduct a reasonable and adequate applicant screening process, including background investigations to determine whether applicants for employment with the Farmington Police Department were appropriately qualified and had the appropriate temperament and psychological status to act as professional law enforcement officers;

    b. Assure that law enforcement officers of the Farmington Police Department received appropriate and adequate training, including at a minimum the amounts required by law, prior to performing duties as law enforcement officers;

    c. Prepare, adopt and inculcate appropriate policies, procedures and protocols regarding the performance of law enforcement functions by officers of

the Farmington Police Department concerning, among other things, the use of force, the use of deadly force, and the duty to prevent deprivations of rights by other officers; and

d. Monitor and/or discipline law enforcement employees of the Farmington Police Department, including Tracy, in order to assure that officers complied with departmental policies, procedures and protocols.

28. Prior to July 17, 2001, Defendant McCloskey knew or reasonably should have known that Tracy, along with other law enforcement officers of the Farmington Police Department, were acting improperly and violating citizens' constitutional rights. McCloskey also knew or reasonably should have known that Tracy lacked adequate training and certification, and were operating without knowledge of or in flagrant disregard for departmental policies, procedures and protocols in connection with the use of force, the use of deadly force, pursuit driving and the duty to prevent deprivations of rights by other officers.

29. Defendant McCloskey breached the foregoing duties by failing to adopt appropriate policies, procedures, and protocols, as well as by failing to properly screen, hire, train, monitor, supervise, and/or discipline officers of the Farmington Police Department. In particular, Defendant Mark McCloskey failed to adopt proper policies, procedures and protocols, failed to implement appropriate supplemental training, failed to appropriately discipline Tracy, and failed to take other appropriate supervisory actions to correct the problems and to prevent the deprivation of rights of Crystal DeYapp, as a result of the misconduct of Tracy.

30. The conduct of McCloskey, described above, was intentional, reckless, wanton, willful, and/or callously indifferent to rights of the public, including Plaintiff and was a direct

and proximate cause of the deprivation of the clearly established Fourth Amendment rights of Crystal DeYapp, as well as the resultant injuries and damages described herein.

### THIRD CAUSE OF ACTION
### Claims Against Tracy Under the Tort Claims Act

31. The contents of paragraphs 1 through 30, above, are incorporated hereinto by reference as if set forth in full.

32. Tracy, as a law enforcement officer, had the duty in any activity that he actually undertaken to exercise for the safety of others that care ordinarily exercised by a reasonable, prudent and qualified law enforcement officer in the light of the nature of what was being done. Tracy breached his duty by using unreasonable, unnecessary and unjustified excessive force, deadly force and by engaging in improper pursuits.

33. The conduct of Tracy, described above, resulted in personal injury, bodily injury, wrongful death and property damage to Plaintiff resulting from assault, battery, false imprisonment, false arrest and/or deprivation of rights, privileges or immunities secured by the constitution and laws of the United States and New Mexico.

34. The conduct of Tracy, described above, was a direct and proximate cause of the injuries and damages to Plaintiff described herein.

### FOURTH CAUSE OF ACTION
### Claims against Chief McCloskey for Supervisory Liability under the Tort Claims Act

35. The contents of paragraphs 1 through 34, above, are incorporated hereinto by reference as if set forth in full.

36. Defendant McCloskey, as Chief of the Farmington Police Department, had the duty in any activity actually undertaken by him to exercise for the safety of others that care ordinarily exercised by a reasonable, prudent and qualified police chief in the light of what was

being done. In addition, McCloskey had a duty to properly screen, hire, train, monitor, supervise and/or discipline subordinate and supervisory law enforcement employees of the Farmington Police Department, including Tracy. As part of that responsibility, McCloskey had a duty to take those actions referenced in Paragraph 27(a) through (d), above.

37. Prior to July 17, 2001, McCloskey breached the foregoing duties by failing to properly screen, hire, train, monitor, supervise, and/or discipline law enforcement officers of the Farmington Police Department, including Tracy. McCloskey further breached his duties by failing to adopt appropriate policies, procedures and protocols, by failing to implement appropriate supplemental training, by failing to appropriately discipline Tracy and other officers of the Farmington Police Department, and by failing to take other appropriate and reasonable supervisory actions to correct the problems and to prevent the harm which resulted to Plaintiff as a result of the misconduct of Tracy, described above.

38. The conduct of McCloskey, described above, resulted in personal injury, bodily injury and property damage to Plaintiff resulting from assault, battery, false imprisonment, false arrest and/or the deprivation of rights, privileges or immunities secured by the constitution and laws of the United States and New Mexico.

39. The conduct of McCloskey, described above, was a direct and proximate cause of the injuries and damages to Plaintiff, set forth below.

## DAMAGES

40. The contents of paragraphs 1 through 39, above, are incorporated hereinto by reference as if set forth in full.

41. As a direct and proximate result of the conduct of Defendants, described above, Plaintiff Kenneth DeYapp, as parent and next friend of Crystal DeYapp, a minor child, is entitled

to recover damages for her physical injuries, temporary disability, lost enjoyment of life, impairment to lifetime earning capacity, loss of household services, medical and/or other related treatment expenses, as well as her pain and suffering and emotional distress. It is reasonably anticipated that some or all of these injuries will continue in the future and will be permanent. Therefore, Plaintiff is entitled to recover damages against all Defendants in an amount to be determined at the trial of this cause.

42.     Because Defendants' conduct involved intentional misconduct, recklessness, gross negligence, willfulness, and/or callous indifference to Plaintiff's rights, and/or because Defendants' conduct was motivated by malice, evil motive or intent, Plaintiff is entitled to recover a separate award of punitive and exemplary damages against each Defendant, in their individual capacities, under Plaintiff's § 1983 claims in amounts to be determined at the trial of this cause.

**WHEREFORE**, Plaintiff requests the following relief against Defendants: An award of compensatory damages against each of them, as set forth above; an award of punitive damages against each of them under Plaintiff's § 1983 claims only, as set forth above; an award of pre- and post-judgment interest on any amounts recovered herein; his costs of action herein, including attorneys' fees on her § 1983 claims pursuant to Title 42 U.S.C. § 1988; and such other and further relief as the Court may deem appropriate under the circumstances.

## JURY TRIAL REQUEST

PLAINTIFF, by and through counsel, hereby demands trial by jury, pursuant to the terms and conditions of Fed.R.Civ.P. 38, in regard to all sued in the above referenced case.

Respectfully submitted,

By: _____

Joe M. Romero, Jr.
Attorney for Plaintiffs
1905 Lomas Blvd. NW
Albuquerque, NM 87104
(505) 843-9776