# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

KENNETH DEYAPP, as parent
and next friend of CRYSTAL DEYAPP,

      Plaintiff,

v.                                 No. Civ. 02-452 JP/RLP

FARMINGTON POLICE OFFICER TAFT TRACY,
FARMINGTON POLICE CHIEF MARK McCLOSKEY,
and CITY OF FARMINGTON,

      Defendants.

## MEMORANDUM OPINION AND ORDER

On August 30, 2002, Defendants filed their Motion to Dismiss No. I (Doc. No. 9) under

FED. R. CIV. P.12(b)(6), seeking dismissal of Plaintiff's federal claims brought under 42 U.S.C. §

1983, and their Motion to Dismiss No. II (Doc. No. 11) under Rule 12(b)(6), seeking dismissal of

Plaintiff's state law claims brought under the New Mexico Tort Claims Act ("NMTCA").[1]

Having carefully reviewed the briefs and relevant case law, the Court determines that Defendants'

motions should be granted in part and denied in part.

## I.      STANDARD OF REVIEW

The Supreme Court has stated that "a complaint should not be dismissed for failure to

state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support

---

[1] On June 3, 2004, the Judge to whom this case originally was assigned recused, without having ruled on these motions for almost two years, and the case was reassigned.

of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).   In considering a Rule 12(b)(6) motion to dismiss, a court must liberally construe the pleadings, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Dill v. City of Edmond, 155 F.3d 1193, 1203 (10th Cir. 1998).  The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.  Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991).  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  In assessing a motion to dismiss, a court will not look beyond the four corners of the complaint.  Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995).

## II.    FACTUAL BACKGROUND

The following facts are alleged in Plaintiff's First Amended Complaint (Doc. No. 5).  On the evening of July 17, 2001, Crystal DeYapp, who was then 16-years old, was riding as a passenger in a pickup truck driven by her friend, 19-year old Junior Juarez.  Am. Compl. at ¶ 9.  Another friend, 16-year old Grisel Avila, was also a passenger in the truck.  Id.  These three individuals were unarmed, were not members of any gang, and were not using alcohol or drugs. Id.

As they drove past several used car dealerships on Main Street in Farmington, New Mexico, Mr. Juarez slowed down in the right lane so that his passengers could better observe the vehicles in the dealership lots.  Id.  At that point, a vehicle driven by a man later identified as

2

Ronald Foote pulled alongside Mr. Juarez's truck.  Id. at ¶ 10.  Mr. Foote and his girlfriend, who was in the passenger seat, began yelling obscenities and making obscene gestures at Mr. Juarez, apparently in reaction to the fact that he had been driving slowly.  Id.  When the vehicles came to a stop at the next intersection, Mr. Foote got out of his vehicle, approached Mr. Juarez's truck, and challenged Mr. Juarez to a fight.  Id. at ¶ 11.  Mr. Juarez declined to fight Mr. Foote, and subsequently drove away from the intersection.  Id.  Mr. Juarez then proceeded to the parking lot of a nearby fast food restaurant.  Id. at ¶ 12.  As the three friends prepared to order food at the restaurant, Ms. Avila observed Mr. Foote again approaching Mr. Juarez's vehicle.  Wishing to avoid another confrontation with Mr. Foote, Mr. Juarez and his passengers drove away from the restaurant before Mr. Foote reached his vehicle.  Id.

After leaving the fast food restaurant, Mr. Juarez drove Ms. Avila to her residence.  Id. at ¶ 13.  Once Ms. Avila had been dropped off, Crystal DeYapp asked Mr. Juarez to stop at a nearby gas station so that she could use the restroom.  Id.  Both Mr. Juarez and Crystal exited the vehicle at the gas station.  Id.  While Mr. Juarez and Crystal were at the gas station, a fight broke out between two groups of youths in the parking lot near the area where Mr. Juarez's truck was parked.  Id.  Mr. Juarez became involved in the fight, but only to the extent necessary to prevent damage to his vehicle.  Id.  As he was pushing people away from his truck, Mr. Juarez told Crystal to get in the truck so that they could leave the scene.  Id. at ¶ 14.  Once inside the vehicle, Mr. Juarez and Crystal heard a loud noise on the passenger side, which they believed to be a bottle striking the truck.  Id.  Alarmed by this noise and fearing for their safety, Mr. Juarez began slowly backing his truck out of the gas station parking lot.  Id.

As the youths continued fighting and Mr. Juarez was backing his vehicle out of the parking lot, Mr. Foote and Farmington Police Officer Taft Tracy walked up to the gas station.  Id. Apparently, Mr. Foote had seen Mr. Juarez in the gas station parking lot and was attempting to provoke another confrontation.  Id.  As Mr. Juarez backed up his truck and attempted to drive away, Mr. Foote stepped in front of Mr. Juarez's vehicle.  Id. at ¶ 16.  At no time did either Mr. Juarez or Crystal see a police officer, or hear any command for them to stop.  Id. at ¶ 17.

At that point, Officer Tracy, who was standing slightly behind and to the left of the driver's door, discharged his firearm into Mr. Juarez's vehicle.  Id.  The bullet from Officer Tracy's weapon entered Mr. Juarez's upper left jaw and exited just beneath his lower right jaw, and then struck and lodged in Crystal's left calf.  Id. at ¶ 18.  The bullet damaged Mr. Juarez's vocal cords and severed part of his tongue, but did not strike any vital organ or artery.  Id. Doctors have been unable to remove the bullet from Crystal's calf out of concern that doing so would cause nerve and bone damage.  Id.  At the time of the incident, there were no pending criminal charges or outstanding arrest warrants for either Mr. Juarez or Crystal DeYapp.  Id. at ¶ 20.

Kenneth DeYapp, as parent and next friend of Crystal DeYapp, now brings this lawsuit, asserting claims against Defendants Officer Tracy, Farmington Police Chief Mark McCloskey, and the City of Farmington (the "City").  In the first cause of action under 42 U.S.C. § 1983, Plaintiff alleges that the conduct of Officer Tracy constituted an illegal seizure and an unreasonable use of excessive force in violation of the Fourth Amendment.  Id. at ¶¶ 22-25.  In the second cause of action, Plaintiff asserts a claim of supervisory liability under Section 1983 against Chief McCloskey and the City for failure to properly supervise and train law enforcement employees,

4

including Officer Tracy.  Id. at ¶¶ 26-30.  In the third cause of action brought against Officer

Tracy under the NMTCA, Plaintiff alleges that Officer Tracy's actions constituted assault, battery,

false imprisonment, false arrest, and/or deprivation of rights under the constitution and laws of the

United States and the State of New Mexico.  Id. at ¶¶ 31-34.  Plaintiff's fourth cause of action is

under the NMTCA against Chief McCloskey and the City, on the ground that Chief McCloskey

failed to properly supervise and train Officer Tracy, and that this failure was a proximate cause of

Crystal DeYapp's injuries.  Id. at ¶¶ 35-39.  Plaintiff seeks compensatory damages on all claims,

and punitive damages on the claims brought under Section 1983.  Id. at ¶¶ 41-42.

## II.   DISCUSSION

In their Motion to Dismiss I, Defendants move to dismiss Plaintiff's federal claims on

several grounds.  First, Defendants argue that Officer Tracy is entitled to qualified immunity on

Plaintiff's first cause of action.  In addition, Defendants contend that Plaintiff's second cause of

action should be dismissed because there was no underlying constitutional violation.  Defendants

further assert that Plaintiff may not sue Chief McCloskey in his official capacity under Section

1983, nor may Plaintiff recover punitive damages against Chief McCloskey or the City on the

Section 1983 claims.

In their Motion to Dismiss II, Defendants move for dismissal of Plaintiff's state law

claims.  Defendants first contend that Officer Tracy and Chief McCloskey are entitled to qualified

immunity for Plaintiff's state constitutional claims, or, in the alternative, that the Court should

decline to exercise supplemental jurisdiction over these claims on the ground that they represent

novel or complex issues of New Mexico law.  Defendants next argue that Plaintiff is barred by the

doctrine of state sovereign immunity from bringing the tort claims asserted in the third and fourth

causes of action against Officer Tracy and Chief McCloskey.  Furthermore, Defendants contend that Plaintiff has failed to state a claim for assault or battery in the third and fourth causes of action.

**A.    Qualified Immunity for Plaintiff's Section 1983 Claim Against Officer Tracy**

Defendants assert that Plaintiff's First Cause of Action alleging a violation of Fourth Amendment rights under Section 1983 should be dismissed on the ground that Officer Tracy is entitled to the defense of qualified immunity.  Although the defense of qualified immunity is typically raised in a motion for summary judgment, a defendant may also assert qualified immunity in a motion to dismiss.  See Peterson v. Jensen, 2004 WL 1248658 at *1 (10th Cir. 2004). However, the Tenth Circuit has stated that asserting a qualified immunity defense in a Rule 12(b)(6) motion subjects the defendant to a more challenging standard of review than would apply on summary judgment, because a Rule 12(b)(6) motion "is viewed with disfavor, and is rarely granted."  Id. (citing Lone Star Indus., Inc. v. Horman Family Trust, 960 F.2d 917, 920 (10th Cir. 1992)).[2]

As the Supreme Court has stated, qualified immunity operates to "protect officers from the sometimes 'hazy border between excessive and acceptable force,'" and "to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful."  See Saucier v. Katz, 533 U.S. 194, 206 (2001).  In resolving whether a defendant may assert the defense of

---

[2]  Plaintiff maintains that the facts alleged in the First Amended Complaint adequately state a claim for a Fourth Amendment violation under Section 1983.  In the alternative, Plaintiff requests that the Court convert Defendants' motions into motions for summary judgment, which would permit the Court to consider matters outside the pleadings.  Plf. Resp. (Doc. No. 17) at 4.  The Court declines to consider matters outside the pleadings, and therefore, the Court will not treat the motions as motions for summary judgment.  In ruling on these motions, the Court has not considered the facts alleged in the affidavits submitted by Plaintiff.

qualified immunity, a court must first consider whether the plaintiff has alleged a deprivation of an actual constitutional right.  Id. at 201.  If the court finds that the plaintiff has alleged such a violation, the court must then determine whether that right was "clearly established at the time of the alleged violation."  Id.

In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether "the right was sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)) (internal quotations omitted).  The Supreme Court has held that a right is "clearly established" if Supreme Court or Tenth Circuit case law exists on point, or if the "clearly established weight of authority from other circuits" found a constitutional violation from similar actions.  See Murrell v. School Dist. No. 1, 186 F.3d 1238, 1251 (10th Cir. 1999).  However, as the Supreme Court recently stated, "This is not to say an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  Hope v. Pelzer, 536 U.S. 730, 739 (2002).  Officials can still be on notice that their conduct violates established law even in novel factual circumstances.  Id. at 741.

> i.    Plaintiff Has Alleged a Constitutional Violation

The Court first looks to the Amended Complaint to determine whether Plaintiff has alleged a deprivation of the Fourth Amendment right to be free from unreasonable seizures and excessive force.  The Fourth Amendment protects individuals from "unreasonable" seizures, and the Supreme Court has clarified when the use of deadly force is "reasonable" for purposes of the

Fourth Amendment.  See Tennessee v. Garner, 471 U.S. 1, 11-12 (1985); Carr v. Castle, 337

F.3d 1221, 1227 (10th Cir. 2003); Vaughan v. Cox, 343 F.3d 1323, 1328 (11th Cir. 2003).  The

Supreme Court has held that a police officer's use of deadly force to seize a fleeing suspect is

reasonable only when the officer: 1) has probable cause to believe that the suspect poses a threat

of serious physical harm, either to the officer or to others, or that he has committed a crime

involving the infliction or threatened infliction of serious physical harm; 2) reasonably believes

that the use of deadly force was necessary to prevent escape; and 3) has given some warning

about the possible use of deadly force, if feasible.  Garner, 471 U.S. at 11-12; see also Carr, 337

F.3d at 1227; Vaughan, 343 F.3d at 1329-30.

Viewing the facts in the light most favorable to Plaintiff, the Court finds that the Amended

Complaint incontrovertibly alleges that Officer Tracy's use of deadly force was unreasonable for

Fourth Amendment purposes.  Plaintiff alleges that, as Mr. Juarez was slowly backing his pickup

truck out of the gas station parking lot, Officer Tracy discharged his firearm into the passenger

compartment of the truck.  Am. Compl. (Doc. No. 5) at ¶ 17.  Based on this factual allegation, it

can be reasonably inferred that Officer Tracy fired his weapon with the intent to apprehend Mr.

Juarez and Crystal DeYapp.  Moreover, from the facts alleged in the Amended Complaint, there is

no evidence that Officer Tracy had probable cause to believe that either Mr. Juarez or Crystal

DeYapp posed a threat of serious physical harm, or that they had committed a crime involving the

infliction of serious bodily harm.  At the time of the incident, there were no pending criminal

charges or outstanding arrest warrants for either Mr. Juarez or Crystal DeYapp.  Id. at ¶ 20.  At

most, the facts support the inference that Officer Tracy believed that Mr. Juarez and Crystal had

been involved in the ongoing fight in the gas station parking lot.  However, even assuming that to

8

be the case, the Amended Complaint does not allege that the fight was of a substantially serious nature that would cause Officer Tracy to reasonably believe that anyone had been inflicted with serious physical harm.  Moreover, while the Amended Complaint alleges that Mr. Foote had stepped in front of Mr. Juarez's vehicle, there is no indication in the allegations that Mr. Foote was in imminent danger of serious bodily harm, particularly if Mr. Juarez was driving slowly, as the Amended Complaint alleges, at the time that Mr. Foote stepped in front of the vehicle.  Id. at ¶ 16.

      In addition, from the facts alleged in the Amended Complaint, it is clear that Officer Tracy could not have reasonably believed that the use of deadly force was necessary to prevent Mr. Juarez and Crystal DeYapp from escaping.  Rather, the Amended Complaint alleges that Mr. Juarez was backing up slowly at the time of the shooting, and that neither he nor Crystal had noticed Officer Tracy or heard him give a command to stop.  Id. at ¶ 14, 17.  Moreover, the Amended Complaint does not allege that Officer Tracy gave any warning to Mr. Juarez or Crystal about the possible use of deadly force, while the facts suggest that it would have been feasible for him to have given such a warning.  Accordingly, under the holding in Garner, the facts in the Amended Complaint allege that Officer Tracy's use of deadly force against Crystal DeYapp was unreasonable in violation of her Fourth Amendment rights.

      Defendants argue that Officer Tracy did not commit an unreasonable "seizure" of Crystal DeYapp because Officer Tracy did not intend to shoot her.  Def Mem. (Doc. No. 10) at 11. Defendants assert that Officer Tracy intended to shoot only Mr. Juarez, and that Crystal was unintentionally shot when the bullet ricocheted off Mr. Juarez's jawbone.  Def. Reply (Doc. No. 22) at 2.  Accordingly, Defendants maintain that Crystal's Fourth Amendment rights were not

violated because no "seizure" occurred.  See Childress v. City of Arapaho, 210 F.3d 1154, 1155 (10th Cir. 2000) (finding no "seizure" occurred when police officers unintentionally shot hostages).  Yet, as Defendants themselves point out, "a seizure occurs even when an unintended person or thing is the object of the detention or taking . . ." as long as the detention or taking is wilful.  See Brower v. County of Inyo, 489 U.S. 593, 596 (1989).  Defendants have not argued that Officer Tracy's act of discharging his firearm was accidental; rather, the facts alleged in the Amended Complaint show that Officer Tracy willfully fired his weapon into the passenger compartment of the vehicle in the direction of both Mr. Juarez and Crystal DeYapp.   Thus, while Defendants cite a number of cases that stand for the proposition that a police officer does not commit a Fourth Amendment "seizure" by unintentionally shooting innocent bystanders or hostages, those cases are inapposite, because based on the facts alleged in the Amended Complaint, Crystal DeYapp was neither an innocent bystander or a hostage; instead, she was a suspect whom Officer Tracy wilfully sought to apprehend through the use of deadly force.

While Defendants argue that Officer Tracy did not intend to shoot Crystal, there are no facts alleged in the Amended Complaint in support of this contention regarding Officer Tracy's subjective intent at the time of the shooting.  On the contrary, it can be reasonably inferred from the facts alleged in the Amended Complaint that Officer Tracy fired his weapon into Mr. Juarez's vehicle for the purpose of apprehending both Mr. Juarez and Crystal.  Moreover, the Supreme Court has held that an analysis of a defendant's subjective intent is not practicable for purposes of determining whether a Fourth Amendment "seizure" has occurred.  See Brower, 489 U.S. at 598.  The Court finds that the facts set forth in the Amended Complaint, and the inferences drawn therefrom, adequately allege that Officer Tracy discharged his weapon with the intent to

10

apprehend both Mr. Juarez and Crystal DeYapp, and therefore, that Plaintiff has alleged that

Crystal was subjected to an unreasonable "seizure" under the Fourth Amendment. See Vaughan,

343 F.3d at 1329.

      ii.     The Constitutional Right Was Clearly Established

     Having determined that Plaintiff has alleged a violation of Crystal DeYapp's Fourth

Amendment right to be free from unreasonable seizures and excessive force, the Court now turns

to the issue of whether that right was "clearly established" at the time of the incident in question.

At the time of the incident, it was well-settled under Supreme Court and Tenth Circuit case law

that the Fourth Amendment guarantees the right to be free from unreasonable seizures and

unreasonable excessive force. See, e.g., Saucier, 533 U.S. at 201-02; Carr, 337 F.3d at 1227 n. 7.

The Court's inquiry must go further, however, to examine whether it would have been clear to an

objectively reasonable officer that Officer Tracy's conduct violated this Fourth Amendment right.

Saucier, 533 U.S. at 202. The Court must determine whether Officer Tracy's use of deadly force

was objectively reasonable in light of the facts confronting Officer Tracy at the time of the

incident. See Carr, 337 F.3d at 1227; Maestas v. Lujan, 351 F.3d 1001, 1009 (10th Cir. 2003);

Vaughan, 343 F.3d at 1332. As the Supreme Court has noted, the objective reasonableness of the

police officer's use of deadly force must be "judged from the perspective of a reasonable officer

on the scene, rather than with the 20/20 vision of hindsight." See Graham v. Connor, 490 U.S.

386, 396 (1989).

     Applying this standard to the facts alleged in the Amended Complaint, an objectively

reasonable police officer in Officer Tracy's position could not have believed that he was entitled

to use deadly force to apprehend Crystal DeYapp. As stated above, the Supreme Court in Garner

delineated the circumstances under which a police officer may use deadly force to prevent the escape of a fleeing suspect.  Viewing the facts in the light most favorable to Plaintiff, none of the criteria set forth in <u>Garner</u> were met at the time that Officer Tracy used deadly force to apprehend Mr. Juarez and Crystal.  Therefore, the Court finds that it would have been clear to an objectively reasonable police officer that the use of deadly force against Crystal in that situation was unreasonable, and constituted a violation of her Fourth Amendment rights.  Accordingly, the Court finds that Officer Tracy is not entitled to the defense of qualified immunity for Plaintiff's Fourth Amendment claim asserted in the first cause of action.

### B.    Plaintiff's Section 1983 Claims Against Chief McCloskey and the City

Defendants seek dismissal of Plaintiff's second cause of action on the grounds that there was no underlying constitutional violation to support a claim for supervisory liability against Chief McCloskey and the City.  Defendants further assert that Plaintiff's claim against Chief McCloskey in his official capacity should be dismissed because it is duplicative of the claim brought against the City.  Furthermore, Defendants assert that Plaintiff may not seek punitive damages against Chief McCloskey in his official capacity or the City of Farmington under the Section 1983 claim.

Since the Court has determined that the facts in the Amended Complaint do allege a constitutional violation, the Court rejects Defendants' argument that the supervisory liability claims against Chief McCloskey and the City should be dismissed.  However, Plaintiff concedes that the official capacity claim brought against Chief McCloskey should be treated as a claim against the City.  Plf. Resp. (Doc. No. 17) at 9.  Because Plaintiff's claim against Chief McCloskey in his official capacity is duplicative of the claim brought against the City, the Court finds that the official capacity claim against Chief McCloskey should be dismissed.  See <u>Castro</u>

Romero v. Becken, 256 F.3d 349, 355 (5th Cir. 2001) (upholding district court's dismissal of Section 1983 official capacity claim that was duplicative of claim brought against governmental entity).  In addition, Plaintiff concedes that he does not seek punitive damages against the City on the Section 1983 claim, and asks leave to amend the Amended Complaint to clarify that he is seeking punitive damages solely against Officer Tracy and Chief McCloskey, each in his individual capacity.  Plf. Resp. (Doc. No. 17) at 10.  Defendants object to Plaintiff's request on the ground that amending the Amended Complaint would be futile because Plaintiff cannot show that Crystal DeYapp's constitutional rights were violated.  Def. Reply (Doc. No. 22).  In light of the Court's ruling that Plaintiff's Amended Complaint has alleged a constitutional violation, the Court rejects Defendants' argument, and will interpret Plaintiff's Amended Complaint to claim punitive damages under Section 1983 only against Officer Tracy and Chief McCloskey in their individual capacities.

C.     **Plaintiff's State Constitutional Claims Against Officer Tracy and Chief McCloskey**

In their Motion to Dismiss II, Defendants argue that Officer Tracy and Chief McCloskey are entitled to the defense of qualified immunity for the state constitutional claims asserted in Plaintiff's third and fourth causes of action under the NMTCA.  Def. Mem. (Doc. No. 12) at 2. In the alternative, Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state constitutional claims against Officer Tracy and Chief McCloskey because these claims raise "novel or complex" issues of state law.

The issue of whether qualified immunity exists as a defense against state constitutional and tort claims brought under the NMTCA is an unsettled area of New Mexico law.  See Romero v.

Sanchez, 119 N.M. 690, 696 (N.M. 1995) ("Whether the doctrine of qualified immunity protects

an official from an action brought under the Tort Claims Act is an open question").  In light of the

unsettled state of the law, Plaintiff agrees that Defendants' assertion of the qualified immunity

defense to the claims of violations of the New Mexico Constitution "weighs heavily in favor of

dismissing her state constitutional claims without prejudice," and therefore concurs in Defendants'

request that the Court decline to exercise supplemental jurisdiction over these state law claims.

Since Plaintiff's claims for violations of the New Mexico Constitution raise novel or complex

issues of state law, and since Plaintiff agrees that they should not be resolved in this federal court

action, the Court will decline to exercise supplemental jurisdiction over these state law claims.

See 28 U.S.C. § 1367(c)(1).  Plaintiff's state constitutional claims will, therefore, be dismissed

without prejudice.

### D.     Plaintiff's State Law Tort Claims Against Officer Tracy and Chief McCloskey

Defendants contend that Plaintiff's state law tort claims in the third and fourth causes of

action should be dismissed because the NMTCA does not waive state sovereign immunity for

these claims.  Moreover, Defendants argue that Plaintiff's Amended Complaint fails to state a

claim for the intentional torts of assault and battery.

### i.     Waiver of State Sovereign Immunity

Under New Mexico law, a plaintiff may only sue a governmental entity or public employee

acting within the scope of their duties when the state has waived its sovereign immunity.  See,

e.g., Chavez v. City of Albuquerque, 124 N.M. 479, 482 (N.M. Ct. App. 1997).  The NMTCA

waives state sovereign immunity for injuries resulting from "assault, battery, false imprisonment,

14

false arrest . . . or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties."  N.M.S.A. 1978 § 41-4-12 (1996).  The New Mexico Supreme Court has held that a waiver of immunity under the NMTCA may not be implied, but must be specifically found within one of the Act's exceptions.  See Hydro Conduit Corp. v. Kemble, 110 N.M. 173, 177 (N.M. 1990).

In the third cause of action, Plaintiff asserts claims against Officer Tracy for Crystal DeYapp's injuries arising from "assault, battery, false imprisonment, false arrest and/or deprivation of rights, privileges or immunities secured by the constitution and laws of the United States . . . ."  Am. Compl. (Doc. No. 5) at ¶ 33.  The NMTCA clearly waives state sovereign immunity for these claims.  See N.M.S.A. 1978 § 41-4-12.  Accordingly, the Court rejects Defendants' assertion that the state has not waived its sovereign immunity for these tort claims.

In the fourth cause of action, Plaintiff asserts claims against Chief McCloskey for Crystal DeYapp's injuries arising from his failure to "properly screen, hire, train, monitor, supervise and/or discipline" law enforcement employees such as Officer Tracy.  Am. Compl. (Doc. No. 5) at ¶ 37.  Plaintiff contends that Chief McCloskey's failure to adequately train and supervise Officer Tracy proximately caused the injuries Crystal DeYapp sustained as a result of Officer Tracy's conduct.  Id. at ¶¶ 33, 34.  Although the NMTCA does not expressly waive sovereign immunity for a police officer's negligent training or supervision, New Mexico courts have held that the NMTCA waives immunity for claims that a police officer has negligently caused the commission of an enumerated tort against the plaintiff.  See Ortiz v. New Mexico State Police,

112 N.M. 249, 251-52 (N.M. Ct. App. 1991) (citing Methola v. County of Eddy, 95 N.M. 329

(N.M. 1980).  Because Plaintiff's Amended Complaint alleges that Chief McCloskey's negligent

training and supervision proximately caused Officer Tracy to commit the enumerated torts of

assault, battery, false arrest, and false imprisonment against Crystal DeYapp, the Court finds that

Plaintiff's claims against Chief McCloskey are not barred by sovereign immunity.  See Ortiz, 112

N.M. at 252.

      ii.      Plaintiff's Claims for Assault and Battery

In order to state a claim for "assault" under New Mexico law, a plaintiff must show

evidence of "any unlawful act, threat, or menacing conduct which causes [the plaintiff] to

reasonably believe that he is in danger of receiving an immediate battery."  See Romero, 119

N.M. at 693; Baca v. Velez, 114 N.M. 13, 15 (N.M. Ct. App. 1992); N.M.S.A. 1978 § 30-3-1(B)

(1994).  In order to state a claim for "battery," a plaintiff must show evidence of an "unlawful,

intentional touching or application of force to the person of another, when done in a rude, insolent

or angry manner."  N.M.S.A. 1978 § 30-3-4 (1994).

Defendants argue that Plaintiff has failed to allege any facts in the Amended Complaint

indicating that Crystal DeYapp was aware that Officer Tracy was going to shoot her before the

shot was actually fired.  Def. Mem. (Doc. No. 12) at 20.  Accordingly, Defendants assert that

Plaintiff has failed to state a claim for assault, because the Amended Complaint does not allege

that Crystal DeYapp reasonably believed she was in danger of receiving an immediate battery.

The Court notes that Plaintiff's Amended Complaint alleges that neither Mr. Juarez nor Crystal

DeYapp saw Officer Tracy at any time prior to the point when Officer Tracy discharged his

weapon.  Am. Compl. (Doc. No. 5) at ¶ 17.  In light of this factual allegation, the Court agrees

with Defendants that Plaintiff has failed to state a claim for assault, because it appears beyond

doubt that there is no set of facts that Plaintiff can prove to show that Crystal DeYapp reasonably

believed she was in danger of receiving an immediate battery before Officer Tracy fired his

weapon.  Accordingly, the Court concludes that Plaintiff's claim for assault should be dismissed.

See Romero, 119 N.M. at 693 (upholding dismissal of assault claim when evidence failed to show

plaintiff feared an imminent battery); Baca, 114 N.M. at 15 (holding that claim for assault must

fail because plaintiff failed to present evidence that she felt apprehension before touching took

place).

Defendants also contend that Plaintiff has failed to state a claim for battery, because there

are no facts alleged in the Amended Complaint to show that Officer Tracy intentionally touched

or applied force against Crystal DeYapp.  However, as the Court noted above in its analysis of

Defendants' qualified immunity argument, the facts alleged in the Amended Complaint and the

reasonable inferences drawn therefrom indicate that Officer Tracy intentionally discharged his

firearm into the passenger compartment of the vehicle with the intent to apprehend Mr. Juarez

and Crystal.  Accordingly, the Court finds that the facts alleged in the Amended Complaint satisfy

the intent requirement necessary for Plaintiff to state a claim for battery under New Mexico law.

THEREFORE, it is ORDERED that:

1.    Defendants' Motion to Dismiss I (Doc. No. 9) is GRANTED in part, in that Plaintiff's Second Cause of Action brought against Chief McCloskey in his official capacity will be DISMISSED with prejudice; Defendants' Motion to Dismiss I is DENIED in all other respects;

2.    Defendants' Motion to Dismiss II (Doc. No. 11) is GRANTED in part, in that Plaintiff's State Constitutional claims asserted in the Third and Fourth Causes of Action will be DISMISSED without prejudice, and Plaintiff's claims for assault stated in the Third and Fourth Causes of Action will be DISMISSED with prejudice; Defendants' Motion to Dismiss II is DENIED in all other respects.


_____
SENIOR UNITED STATES DISTRICT JUDGE

18