IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CRYSTAL DEYAPP,**

    Plaintiff,

v.                                                                                          No. Civ. 02-452 JP/RLP

**FARMINGTON POLICE OFFICER TAFT TRACY,**

    Defendant.

*Consolidated with,*

**JUNIOR JUAREZ,**

    Plaintiff,

v.                                                                                          No. Civ. 02-453 JP/RLP

**FARMINGTON POLICE OFFICER TAFT TRACY,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

Sacramento Juarez, Jr. and Crystal DeYapp were shot by Farmington Police Officer Taft Tracy on July 17, 2001. As a result of the shooting, Plaintiffs filed suit against Officer Tracy, the City of Farmington and Farmington Police Chief Mark McCloskey. The parties stipulated to the dismissal of the claims against the City of Farmington and Chief McCloskey (Doc. 101). The parties also agreed at the pre-trial conference that Crystal DeYapp is no longer a minor and should be substituted as plaintiff in place of her father, former named plaintiff Kenneth DeYapp. The suit continues against Officer Tracy in his personal capacity and the claims relevant to this

1

Memorandum Opinion and Order are alleged Fourth Amendment illegal seizure and excessive force violations by Officer Tracy (Count I); and alleged false imprisonment and false arrest by Officer Tracy (Count III). Officer Tracy filed his Motion for Partial Summary Judgment No. 1: Dismissal of Plaintiffs' Fourth Amendment Illegal Search and Seizure and State Law False Arrest, False Imprisonment, and Negligence Claims on August 30, 2004 (Doc. 91). After a careful review of the law, briefs and admissible evidence, I conclude that Officer Tracy's motion should be denied.

## I.   STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of the non-movant's pleadings. Bacchus, 939 F.2d at 891. To withstand a motion for summary judgment, the non-movant must make specific reference to admissible evidence in the record. Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir.

1995). Unsubstantiated allegations, no matter how true they might be, cannot be considered. Id.

## II.     FACTUAL BACKGROUND

The following facts are alleged in Plaintiff's First Amended Complaint (Doc. No. 5) and are supported by deposition testimony that most favors the non-movants. On the evening of July 17, 2001, Crystal DeYapp, who was then 16-years old, was riding as a passenger in the cab of a pickup truck driven by her friend, 19-year old Sacramento Juarez, Jr. Both Mr. Juarez and Ms. DeYapp exited the vehicle at a Mustang gas station. While Mr. Juarez and Ms. DeYapp were at the gas station, a fight broke out between two groups of youths in the parking lot near the area where Mr. Juarez's truck was parked. Officer Tracy responded to the dispatch call referencing a fight at the Mustang gas station. Tracy Depo. at 27. The dispatch message contained no mention of weapons or identifications of the individuals involved in the fight. Tracy Depo. at 29. Officer Tracy admitted that he did not have any information from the dispatcher that indicated Mr. Juarez was involved in any crime. Tracy Depo. at 29. Mr. Juarez did not see Officer Tracy approaching. Juarez Depo. at 132, 139, 140. An object hit Mr. Juarez' truck window, so Mr. Juarez urged Ms. DeYapp to get into the truck so they could depart. Juarez Depo. at 113. Mr. Juarez began slowly rolling his truck out of the gas station parking lot. Juarez Depo. at 113. As Mr. Juarez attempted to drive away, Ronald Foote stepped in front of Mr. Juarez's vehicle, perhaps five to six feet away. Juarez at Depo. at 116-118. At no time did Mr. Juarez see a police officer or hear any command for them to stop. Juarez Depo. at 131. Officer Tracy, who was standing slightly behind and to the left of the driver's door, discharged his firearm into Mr. Juarez's vehicle. Tracy Depo. at 26. The bullet from Officer Tracy's weapon entered Mr. Juarez's upper left jaw and exited just beneath his lower right jaw, and then struck and lodged in

Ms. DeYapp's left calf.

### III. DISCUSSION

First, with respect to all of Plaintiffs' claims against Officer Tracy, there are multiple issues of material fact which are the province of the jury to determine and therefore summary judgment must be denied. Second, with respect to the federal constitutional claims against Officer Tracy, Plaintiffs have shown that Officer Tracy is not entitled to qualified immunity as a matter of law.

#### A. Material Facts Are In Dispute

Plaintiffs dispute many of Officer Tracy's claimed "undisputed material facts" and point to deposition testimony of many witnesses to substantiate their positions that there are factual issues that should be decided by a jury after hearing trial testimony. The facts in dispute are material to the claims alleged because, if believed, they could determine whether or not a jury returns a verdict for Plaintiffs or Defendant.

##### 1. Fourth Amendment Violation (Count I)

Plaintiffs' Amended Complaint ¶ 24 states that Officer Tracy "deprived Crystal DeYapp and Junior Juarez of their rights under the Fourth Amendment to the United States Constitution to be free from unreasonable and illegal seizures of the person as well as to be free from the application of unreasonable and excessive force in connection with said seizures and use of force." Plaintiffs conceive of their excessive force and illegal seizure allegations as one claim, arguing that the excessive force of firing a bullet into Juarez' head and DeYapp's leg constructively seized both Plaintiffs because the wounds rendered them unable to leave the gas station. **"Whenever an officer restrains the freedom of a person to walk away, he has seized that person."** Tennessee v. Garner, 471 U.S. 1, 7 (1985); see also United States v. Brignoni-Ponce, 422 U.S. 873, 878

4

(1975); see also Terry v. Ohio, 392 U.S. 1, 16-19, (1968). The lack of probable cause to seize by shooting, Plaintiffs argue, makes this seizure illegal; Plaintiffs do not disaggregate the level of force used in seizing from the seizure itself. "[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." Tennessee v. Garner, 471 U.S. 1, 7.

Officer Tracy, by contrast, sees illegal seizure and excessive force as distinct and separate claims and moves for summary judgment on the illegal seizure claim but not on the excessive force claim. Officer Tracy attempts to bifurcate the illegal seizure claim and the excessive force claim. Officer Tracy argues that he had probable cause to seize Mr. Juarez, thus rendering the seizure legal, and so summary judgment should be granted in his favor on that claim. Under this view, one does not consider the level of force used to effect the seizure. The Supreme Court has explicitly rejected this view. In Tennessee v. Garner, the law enforcement officer argued that if the officer had probable cause to effect an arrest, then "the Fourth Amendment has nothing to say about *how* that seizure is made. This submission ignores the many cases in which this Court, by balancing the extent of the intrusion against the need for it, has examined the reasonableness of the manner in which a search or seizure is conducted." Tennessee v. Garner, 471 U.S. 1, 7-8 (1985) (italics in original).

This is a situation in which the otherwise analytically distinct claims of illegal seizure and excessive force must be considered together because 1) the firing of the bullet (the alleged excessive force) created Plaintiffs' immobility (the alleged illegal seizure) and 2) one cannot weigh Officer Tracy's reasonable belief as to the probable cause to seize Mr. Juarez without considering the way Officer Tracy chose to effect that seizure, as required by Tennessee v. Garner. When

5

considering the shooting-seizure incident as a whole, the question for decision becomes whether Officer Tracy had probable cause to seize Mr. Juarez and Ms. DeYapp by shooting them. This is a question that must be put to the jury because the existence of probable cause is a jury question. J. C. Penney Co. v. O'Daniell, 263 F.2d 849 (10th Cir. 1959). Consequently, I must deny summary judgment for Officer Tracy as to Count I.

### 2. False Arrest and False Imprisonment (Count III)

Plaintiffs allege that Officer Tracy falsely arrested and falsely imprisoned them after having shot them both. Officer Tracy argues that he had reasonable cause to arrest and imprison Mr. Juarez, so neither the arrest nor the imprisonment of Mr. Juarez was false and therefore Officer Tracy is entitled to judgment as a matter of law of Mr. Juarez' claim. Mr. Juarez responds to this argument by pointing out that the existence of reasonable cause[1] is a question for the fact finder, not a legal question to be resolved by summary judgment. As for Ms. DeYapp's claim, Officer Tracy argues that he did not even arrest or imprison her because she was always free to leave. Ms. DeYapp counters this argument by pointing to the case law which explains proof of custody is not necessary to establish a claim of false arrest and imprisonment; evidence of interference with her freedom of locomotion is sufficient.

Plaintiffs' causes of action for false arrest and false imprisonment and the defenses to them are very similar to the Fourth Amendment seizure-shooting causes of action and defenses, although the analysis here is based on state law. Summary judgment should be denied in regards to Mr. Juarez' claim of false arrest and false imprisonment because the existence of reasonable cause is a decision for the fact finder when, as in this instance, material facts are in dispute. The

---

[1] New Mexico state law uses the term "reasonable cause" rather than "probable cause."

New Mexico Supreme Court opined, "if the question of reasonable or probable cause for the detention ... is undisputed, it is one of law for the court, but if the evidence is conflicting, it is a mixed question of law and fact..." <u>Stienbaugh v. Payless Drug Store, Inc.</u>, 75 N.M. 118, 122, 401 P.2d 104, 106 (1965). "A reasonable doubt as to the existence of a genuine issue of material fact in dispute precludes summary judgment." <u>Diaz v. Lockheed Electronics</u>, 95 N.M. 28, 31, 618 P.2d 372, 375 (1980).

Summary judgment will also be denied regarding Ms. DeYapp's claim of false arrest and false imprisonment because the facts presented by Ms. DeYapp solidly support this claim under New Mexico law. "The restraint constituting false imprisonment may arise out of words, acts, gestures or similar means which induce reasonable apprehension that force will be used if the plaintiff does not submit." <u>Martinez v. Sears, Roebuck & Co.</u>, 81 N.M. 371, 373, 467 P.2d 37, 40 (1970). Here, firing a bullet into the cab of the truck in which Ms. DeYapp rode could induce reasonable apprehension. "To support the determination of false imprisonment there must be evidence or a reasonable inference of unlawful interference with the personal liberty or freedom of locomotion of another." <u>Id.</u> Because the bullet lodged in Ms. DeYapp's leg, Officer Tracy interfered with her locomotion. For these reasons, summary judgment is not appropriate on Ms. DeYapp's claims under Count III.

### 3. Negligence and Violation of Fourteenth Amendment Claims

Officer Tracy also moved for summary judgment on negligence and Fourteenth Amendment claims he believed the Plaintiffs were asserting. However, the Amended Complaint does not expressly make a negligence claim and does not mention a violation of the Fourteenth Amendment. The Pre-Trial Order does not refer to these claims either. Plaintiff DeYapp's

counsel represented to the Court during the December 8, 2004 Pre-Trial Conference that Plaintiffs are not pursuing a negligence theory and no Fourteenth Amendment violation claim currently is before the Court, although Plaintiffs are contemplating a trial amendment to advance a claim based on violation of the Fourteenth Amendment.  I reserved ruling on whether to grant leave to amend the Complaint to state a Fourteenth Amendment claim until after hearing evidence at trial.   Because Plaintiffs will not present a negligence claim to the jury and Plaintiffs may or may not be permitted to pursue a Fourteenth Amendment violation claim, it is not appropriate to grant summary judgment on those claims.

### B. Officer Tracy Is Not Entitled to Qualified Immunity

Denying summary judgment on the Fourth Amendment claims is appropriate because of the material facts in dispute.  Additionally, denying summary judgment on the Fourth Amendment claims is appropriate because Plaintiffs have shown that Officer Tracy is not entitled to qualified immunity as a matter of law.

As the Supreme Court has stated, qualified immunity operates to "protect officers from the sometimes 'hazy border between excessive and acceptable force,'" and "to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful."  Saucier v. Katz, 533 U.S. 194, 206 (2001).  In resolving whether a defendant is protected by the defense of qualified immunity, a court must first consider whether the plaintiff has alleged a deprivation of an actual constitutional right.  Id. at 201.  If the court finds that the plaintiff has alleged such a violation, the court must then determine whether that right was "clearly established at the time of the alleged violation."  Id.

In determining whether the right was "clearly established," the court assesses the objective

legal reasonableness of the action at the time of the alleged violation and asks whether "the right was sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)) (internal quotations omitted).  The Supreme Court has held that a right is "clearly established" if Supreme Court or Tenth Circuit case law exists on point, or if the "clearly established weight of authority from other circuits" found a constitutional violation from similar actions.  See Murrell v. School Dist. No. 1, 186 F.3d 1238, 1251 (10th Cir. 1999).  However, as the Supreme Court recently stated, "This is not to say an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739 (2002).  Officials can still be on notice that their conduct violates established law even in novel factual circumstances.  Id. at 741.

        **1.**     **Plaintiffs Have Alleged and Presented Evidence of a Constitutional Violation**

Plaintiffs have alleged and shown by admissible evidence a deprivation of the Fourth Amendment right to be free from unreasonable seizures and excessive force.  A bullet to the head of Mr. Juarez and to the leg of Ms. DeYapp rendering both Plaintiffs immobile fits squarely within the established precedent broadly defining a seizure as obstructing an individual's freedom of locomotion.  See Garner, 471 U.S. 1, 7 (1985); United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975); Terry v. Ohio, 392 U.S. 1, 16--19, (1968). The Fourth Amendment protects individuals from "unreasonable" seizures, and the Supreme Court has clarified when the use of deadly force is "reasonable" for purposes of the Fourth Amendment.  See Tennessee v. Garner, 471 U.S. 1, 11-12 (1985); Carr v. Castle, 337 F.3d 1221, 1227 (10th Cir. 2003); Vaughan v. Cox,

9

343 F.3d 1323, 1328 (11th Cir. 2003).  The Supreme Court has held that a police officer's use of deadly force to seize a fleeing suspect is reasonable only when the officer: 1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; 2) reasonably believes that the use of deadly force was necessary to prevent escape; and 3) has given some warning about the possible use of deadly force, if feasible.  Garner, 471 U.S. at 11-12; see also Carr, 337 F.3d at 1227; Vaughan, 343 F.3d at 1329-30.

       Viewing the facts in the light most favorable to Plaintiffs, the Court finds that the Plaintiffs have shown that Officer Tracy's use of deadly force was unreasonable for Fourth Amendment purposes.  As Mr. Juarez was slowly moving his pickup truck out of the gas station parking lot, Officer Tracy discharged his firearm into the cab of the truck.  From this, it can be reasonably inferred that Officer Tracy fired his weapon with the intent to apprehend Mr. Juarez and Ms. DeYapp.  There is conflicting evidence as to whether Officer Tracy had probable cause to believe that either Mr. Juarez or Ms. DeYapp posed a threat of serious physical harm, or to believe that they had committed a crime involving the infliction of serious bodily harm.  At the time of the incident, there were no pending criminal charges or outstanding arrest warrants for either Mr. Juarez or Ms. DeYapp.  Even if Officer Tracy reasonably believed that Mr. Juarez and Ms. DeYapp had been involved in the ongoing fight in the gas station parking lot, there is evidence that the fight was not of such a substantially serious nature that would justify the use of deadly force to apprehend Plaintiffs as they were leaving the area.  Even though Mr. Foote may have stepped in front of Mr. Juarez's vehicle, the evidence favoring Plaintiffs indicates that Mr. Foote was not in imminent danger of serious bodily harm.

Based on the following evidence that supports Plaintiffs' positions, a jury could infer that Officer Tracy could not have reasonably believed that the use of deadly force was necessary to prevent Mr. Juarez and Ms. DeYapp from escaping or injuring Mr. Foote. Mr. Juarez' truck was rolling slowly, if at all, at the time of the shooting. Neither he nor Ms. DeYapp had noticed Officer Tracy or heard him give a command to stop. Neither Mr. Juarez nor Ms. DeYapp heard any warning about the possible use of deadly force, while the Plaintiffs' strongest facts suggest that it would have been feasible for Officer Tracy to have given them such a warning. Accordingly, under the holding in Garner, a jury could find that Officer Tracy's use of deadly force against Mr. Juarez and Ms. DeYapp was unreasonable in violation of their Fourth Amendment rights.

Ms. DeYapp's claims of illegal seizure and excessive force present a slightly different issue than Mr. Juarez' claims. Officer Tracy argues that he did not commit an unreasonable "seizure" of Ms. DeYapp because he did not intend to shoot her. Officer Tracy asserts that he intended to shoot only Mr. Juarez, and that Ms. DeYapp was unintentionally hit when the bullet ricocheted off Mr. Juarez's jawbone. Accordingly, Officer Tracy maintains that Ms. DeYapp's Fourth Amendment rights were not violated because no "seizure" occurred. See Childress v. City of Arapaho, 210 F.3d 1154, 1155 (10th Cir. 2000) (finding no "seizure" occurred when police officers unintentionally shot hostages). However, "a seizure occurs even when an unintended person or thing is the object of the detention or taking . . ." as long as the detention or taking is wilful. Brower v. County of Inyo, 489 U.S. 593, 596 (1989). Officer Tracy does not contend that he accidentally discharged his firearm. The facts support Plaintiffs' position that Officer Tracy willfully fired his weapon into the cab of the vehicle in the direction of both Mr. Juarez and

Ms. DeYapp.  The cases, cited by Officer Tracy, that stand for the proposition that a police officer does not commit a Fourth Amendment "seizure" by unintentionally shooting innocent bystanders or hostages are inapposite.  Under the evidence most favorable to Ms. DeYapp, in the eyes of Officer Tracy, she was neither an innocent bystander nor a hostage; instead, she was a suspect whom Officer Tracy wilfully sought to apprehend through the use of deadly force.

The Eleventh Circuit decided a case with facts similar to those in this action and held that the officer's subjective intent is not relevant to the shooting victim's cause of action.  In Vaughan v. Cox, 343 F.3d 1323 (11th Cir. 2003), a police officer shot at a suspect driving a car but struck a passenger instead of the driver.  The court found that the officer was not entitled to qualified immunity, despite the officer's assertion that he had not intended to shoot the passenger.  The Eleventh Circuit in Vaughan based its decision on Brower v. County of Inyo, 109 U.S. 1378, 1382 (1989), in which the Supreme Court stated,

> In determining whether the means that terminates the freedom of movement is the very means that the government intended we cannot draw too fine a line, or we will be driven to saying that one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned, or by a bullet in the heart that was meant only for the leg. We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result.

The Tenth Circuit also adopted the conclusion of Brower in Holland v. Harrington, 268 F.3d 1179, quoting Brower, **"A seizure occurs even when an unintended person or thing is the object of the detention or taking...."** Id. at 596.  The reasoning in Vaughan and Brower emphasizing results of police actions rather than intangible subjective intent of an individual officer logically applies here.  Officer Tracy's subjective intent is not relevant.  Ms. DeYapp has

12

presented evidence that she was seized.  The jury must determine whether the seizure was legal, i.e., whether Officer Tracy had probable cause to seize Ms. DeYapp.

### 2. The Constitutional Right Was Clearly Established

Having determined that Plaintiffs have alleged and provided evidence of a violation of Plaintiffs' Fourth Amendment rights to be free from unreasonable seizures and excessive force, the Court now considers whether their rights were "clearly established" at the time of the incident. By July 2001, it was well-settled under Supreme Court and Tenth Circuit case law that the Fourth Amendment guarantees the right to be free from unreasonable seizures and excessive force.  See, e.g., Saucier, 533 U.S. at 201-02; Carr, 337 F.3d at 1227 n. 7.  The Court must determine whether Officer Tracy's use of deadly force was objectively reasonable in light of the facts confronting Officer Tracy at the time of the incident.  See Carr, 337 F.3d at 1227; Maestas v. Lujan, 351 F.3d 1001, 1009 (10th Cir. 2003); Vaughan, 343 F.3d at 1332.  As the Supreme Court has noted, the objective reasonableness of the police officer's use of deadly force must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  See Graham v. Connor, 490 U.S. 386, 396 (1989).

Applying this standard to the evidence that most strongly supports the Plaintiffs, I conclude that a reasonable police officer in Officer Tracy's position could not have believed that he was entitled to use deadly force to apprehend Mr. Juarez and Ms. DeYapp.  As stated above, the Supreme Court in Garner delineated the circumstances under which a police officer may use deadly force to prevent the escape of a fleeing suspect.  Viewing the facts in the light most favorable to Plaintiffs, I find that none of the criteria set forth in Garner were met at the time that Officer Tracy used deadly force to apprehend Mr. Juarez and Ms. DeYapp.  It would have been

clear to a reasonable police officer that the use of deadly force against Plaintiffs in the situation confronting Officer Tracy was not justified, and constituted a violation of Plaintiffs' Fourth Amendment rights.  Accordingly, the Court finds that Officer Tracy is not entitled as a matter of law to qualified immunity on Plaintiffs' Fourth Amendment claims.

      THEREFORE IT IS ORDERED that Officer Tracy's Motion for Partial Summary Judgment No. I: Dismissal of Plaintiff's Fourth Amendment Illegal Search and Seizure and State Law False Arrest, False Imprisonment, and Negligence Claims is DENIED.

                                                                     */s/ James A. Parker*
                                        SENIOR UNITED STATES DISTRICT JUDGE