# The Daily Times

Estimated printed pages: 4

March 12, 2005
**Section:** A Section
**Page:** A1

### Police shooting to cost $700,000

*Debra Mayeux*
*The Daily Times*



PLANTIFF'S
EXHIBIT
_3_

The Daily Times

FARMINGTON - Two Farmington residents - one shot in the face, the other in the thigh - have been awarded nearly $700,000 in damages from a lawsuit filed against the Farmington Police Department and an officer.

The Albuquerque jury ruled against the department and Officer Taft Tracy, who was recently promoted to corporal, saying he wrongly discharged his firearm at the teens in July 2001.

"His actions were within the law and justified," Police Chief Mike Burridge said Friday, disputing the award. "I feel very sorry for Officer Tracy to have had this experience in our judicial system."

Sacramento "Junior" Gores and Crystal DeYapp, who were teen-agers at the time of the shooting, were awarded the settlement in connection to medical bills and civil rights violations.

The shooting occurred July 17, 2001, at the Mustang Convenience Store on the corner of 20th Street and Butler Avenue.

The jury's decision came after four hours of deliberations and three days of testimony and evidence presented by the plaintiffs' attorney, Joe Romero of Albuquerque, and the city's attorney, Luis Robles of Albuquerque.

Romero, who became involved with the case in 2001 as a defense attorney, presented evidence that Juarez and DeYapp were two teen-agers who had been jumped by gang members and another Farmington resident the night of the police shooting.

Juarez, who was driving a truck, reportedly was simply trying to leave the convenience store when he was shot in the face by Officer Tracy.

The bullet exited Juarez's face and entered DeYapp's leg, where it remains to this day.

A police investigation into the shooting showed that Juarez and DeYapp had had a run-in early on July 17, 2001 with Ronald Foote, apparently concerning how Juarez was driving.

The two ran into each other later that evening at the Mustang, where Juarez was involved in an alleged gang brawl.

Foote went to the store to buy cigarettes and saw Juarez in his truck. According to the police report, Foote claimed that Juarez attempted to run him down, and Officer Tracy shot the teen-ager to stop him from hurting Foote.

In the jury trial, however, Foote was not called to testify because both sides stipulated he was not a reliable witness, Romero said.

"This was a juvenile fight for which no one was charged with a crime ... no one was treated for injuries," Romero said. "The only people hurt were the kids that were shot by the police officer.

"The verdict confirmed that Ronald Foote was the aggressor that evening, and that the force used to detain Junior Juarez was not reasonable under the circumstances," Romero said.

Eight witnesses testified for the plaintiffs, saying Juarez did not accelerate his truck or try to run down Foote, Romero said.

However, police reports from that time stated the opposite.

Robles said both Officer Tracy and a woman named Virginia Jim testified for the city, saying the teen appeared to be trying to speed away. It was this action that triggered the shooting.

Both Juarez and DeYapp incurred high medical bills as a result, according to the jury, and their civil rights were violated.

The police chief, who sat through the trial, did not agree.

"Based on 23 years of law enforcement experience, there literally was no factual basis for the jury to reach this verdict, and I am shocked," Burridge said.

At the time of the shooting, Tracy was cleared of all wrongdoing after he appeared in front of a grand jury.

His actions also were reviewed by the Farmington Police Department and the San Juan County Sheriff's office.

Burridge said there were problems in the civil trial - including a sleeping juror.

"I witnessed it with my own eyes," the police chief said, adding that Robles tried to have the juror removed.

Robles agreed with the assessment of a sleeping juror, but said U.S. District Judge James Parker denied a motion to remove the juror from the deciding panel.

The alleged sleeping juror became the foreman who led the jury to a decision in favor of DeYapp and Juarez.

The city said the amount - the second highest awarded in a case of this kind - is too high and may appeal.

Another lawsuit involving a Farmington police officer was filed after a detective hit a motorcyclist at the intersection of Troy King Road and West Main Street.

The victim, Don Ferguson, was awarded $1.5 million. However, the amount exceeded the state's tort claims cap and was reduced to a settlement of $550,000, according to Ferguson's attorney Victor Titus.

Robles said in the $690,000 awarded in the latest officer-involved shooting may not match up with the Supreme Court's guidelines for medical reimbursements and punitive damages.

"There needs to be a one-to-one ratio," Robles said.

Juarez received $86,000 for his battery claim, $47,000 for his excessive force claim, and $300,000 in punitive damages.

DeYapp received $32,000 for her battery claim, $25,000 for her excessive force claim and $200,000 in punitive damages.

"The jury was asked that in awarding any additional damages that they be guided by what they believed was fair and just in this case," Romero said. "Obviously, in light of the total damage award, Junior and Crystal are satisfied and humbled by the jury's decision."

Robles said he will file a post-trial motion, pointing out the "disproportionate amount of punitive damages."

Judge Parker will then have to make a decision as to whether the jury's verdict will stand.

The case, which could be appealed to the 10th Circuit Court of Appeals, may take two years to be resolved, Robles said.

Debra Mayeux: dmayeux@daily-times.com

Copyright (c) The Daily Times. All rights reserved. Reproduced with the permission of Gannett Co., Inc. by NewsBank, inc.

The Daily Times: Document Display

<span style="float:right">Page 1 of 2</span>

# The Daily Times

Estimated printed pages: 3



March 18, 2005
**Section:** Viewpoint
**Page:** B5

### Editorial: Getting shot in the face carries a hefty price tag
*The Daily Times*

Farmington Police Chief Mike Burridge says he was "shocked" by an Albuquerque jury verdict that recently awarded nearly $700,000 in damages to two Farmington residents - one who was shot in the face by a police officer, the other wounded in the thigh.

We're shocked that the chief was shocked.

The injured parties - teen-agers at the time - were not convicted of any crime. In fact, they were not even charged.

If a police officer shoots somebody in the face, and that somebody was not committing a violent crime or threatening to harm life or limb, one might reasonably expect to be on the losing end of a hefty lawsuit.

The two teens said they were attempting to leave a parking lot the night of July 17, 2001, after a confrontation with another individual, when the officer shot them.

The City of Farmington is considering an appeal.

The city might instead consider a review of departmental policy when it comes to a police officer discharging a firearm.

"This was a juvenile fight for which no one was charged with a crime," said Albuquerque attorney Joe Romero, who sued the city on behalf of the plaintiffs. "No one (else) was treated for injuries. The only people hurt were the kids that were shot by the police officer."

The police officer, Taft Tracy, was promoted recently to corporal.

"His actions were within the law and justified," Burridge said. "I feel very sorry for Officer Tracy to have had this experience in our judicial system."

An apology to the individuals wrongfully shot would have been a more appropriate response from the chief.

Something about "unfortunate tragedy" and "new steps are in place to prevent such an occurrence in the future" also would be welcomed dialogue.

Instead, we hear the city's attorney, Luis Robles of Albuquerque, saying he will file a post-trial motion, pointing out the "disproportionate amount of punitive damages."

Indeed, the jury award was heavy on punitive damages - $300,000 for Sacramento "Junior" Juarez, who was shot in the face, and $200,000 for Crystal DeYapp, who was struck with the same bullet as it exited Juarez's face.

But perhaps the jury is sending a loud-and-clear message that everyone but the city seems to be hearing: You can't shoot somebody in the face without cause and expect there to be no serious consequences, whether you're a police officer or civilian.

The officer claimed to believe the teen driver was trying to run down another individual, although eight witnesses testified otherwise.

An investigation immediately after the 2001 shooting was conducted by the Farmington Police Department and the San Juan

The Daily Times: Document Display

Sheriff's Office. No wrongdoing was found, with the officer cleared of all possible charges after appearing before a grand jury.

But just because the officer was not charged criminally, the police department and city shouldn't expect to escape civil liability.

If you pull the trigger, you'd better be right.

In our book, getting shot in the face by a police officer in an incident where no major criminal offenses occurred is worth a sizable judgment award against the police department.

If anything, we're shocked the judgment wasn't more - if the jury's intent was to send a message that police and city officials might actually get.

Copyright (c) The Daily Times. All rights reserved. Reproduced with the permission of Gannett Co., Inc. by NewsBank, inc.

# The Daily Times

Estimated printed pages: 3

March 30, 2005
**Section:** Viewpoint
**Page:** B7



### Letters: Despite court decision, Tracy did the right thing
*Deborah Skinner*
*The Daily Times*

Editor:

Re: the March 18 editorial: If the editorial staff of the Daily Times had done any kind of actual investigation into the Junior Juarez shooting incident, they would not have shared the opinion that Officer Tracy shot Juarez without cause.

Have you all forgotten the victim suffered a broken femur from the first two blows to his body from Juarez's car? Just a "conflict between juveniles"? I don't think so. The violent crime Junior Juarez committed was aggravated battery with a deadly weapon.

Junior Juarez is a criminal and confirmed it by his actions that night. What law-abiding citizen would respond the way he did? If you were confronted by a law enforcement officer pointing a gun at you and shouting commands like, "Do not move the car!" would you rev your engine and attempt to strike a man for the third time?

If Juarez's real intent was to leave the parking lot, why didn't he put his car in reverse and back out, instead of running the man down twice!

Every year a criminal gets away with committing a felony because the D.A.'s office doesn't press charges. It usually has to do with the fragile victim in a rape case, or a child in a molestation case, or if the victim is mentally unstable. Taft Tracy absolutely did the right thing. He protected the weak against a criminal using a car as a deadly weapon.

An Assistant District Attorney, at the time the charges were dismissed against Juarez, told me they did so because the victim was, "... unable to withstand the rigors of trial." The D.A.'s Office did not think they could get to "beyond a reasonable doubt" without the victim's crucial testimony. In hindsight, that was a mistake.

Who would have thought an Albuquerque jury would interpret the lack of criminal charges against Juarez as a verdict against Officer Tracy? Who would have thought an entire editorial staff would accuse Tracy of doing something other than showing exemplary judgment in a life-and-death situation?

I urge the citizens of San Juan County not to pass judgment too quickly on Officer Taft Tracy - based on the coverage of the incident and the editorial by The Daily Times. If you're interested in this conflict, investigate for yourself. It's a matter of public record. There were 22 witnesses on scene.

I can't help but believe the unfortunate outcome of this situation will have negative repercussions on law enforcement. In future life-and-death situations, when an officer or deputy has to make a split-second decision to save an innocent person's life, they may hesitate too long. They may be thinking, "What if what happened to Officer Tracy and his family happens to mine?"

I am sure The Daily Times editorial staff will be right there criticizing that officer for "failure to act."

How many of you are willing to carry a gun and bear the awesome and terrible responsibility that comes with the law enforcement career? How many of your families would be willing to endure the safety risks, sacrifices and public servant salaries?

Many of our society are quick to criticize law enforcement, but how many would like to live in a society without reliable law enforcement?

Someone has to toe the line. For the Junior Juarez shooting, that someone was Officer Tracy. I stand firmly behind him and his decision to shoot Junior Juarez in the face - with cause - and pray I would have had the courage to do the same.

Case 1:02-cv-00452-JAP-RLP   Document 159-2   Filed 06/28/05   Page 6 of 22

DEBORAH SKINNER

Farmington

Copyright (c) The Daily Times. All rights reserved. Reproduced with the permission of Gannett Co., Inc. by NewsBank, inc.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CRYSTAL DEYAPP,**

       Plaintiff,

**v.**                                                                            **NO. CIV 02-0452 JP/RLP**

**FARMINGTON POLICE OFFICER TAFT TRACY,**
**and CITY OF FARMINGTON,**

       Defendants.

***Consolidated with,***

**JUNIOR JUAREZ,**

       Plaintiff,

**v.**                                                                            **NO. CIV 02-0453 JP/RLP**

**FARMINGTON POLICE OFFICER TAFT TRACY,**
**and CITY OF FARMINGTON,**

       Defendants.

## AFFIDAVIT OF PHILIP B. DAVIS

STATE OF NEW MEXICO      )
                              ) ss.
COUNTY OF BERNALILLO      )

      I, Philip B. Davis, being duly sworn and upon my oath state and depose as follows:

      1.      I am an attorney licensed to practice law in the State of New Mexico since 1978 and

before the United States District Court for the District of New Mexico, the Seventh and Tenth Circuit

Courts of Appeals and the United States Supreme Court.  I have an AV rating in the Martindale-

Hubbell Law Directory.  I have been listed since 1995 in The Best Lawyers in America for First

Amendment (civil rights, police misconduct) and Employment Law (individuals).  To the best of my

PLANTIFF'S
EXHIBIT
6

knowledge, I have been included in <u>Who's Who in American Law</u> since 1996.

2.       From September 1981 to date I have been in private practice in Albuquerque, New Mexico and have handled primarily federal litigation and plaintiffs' civil rights cases during that time. Approximately ninety percent of my caseload involves federal civil rights litigation, including first amendment, wrongful discharge and retaliation cases, disabilities law cases and police misconduct litigation. I have tried, settled or am currently working on approximately one hundred and fifty federal civil rights cases.

3.       From 1988 to 2003, I served as an editor of the New Mexico Trial Lawyers' monthly publication, reviewing all decisions of the New Mexico federal district courts and summarizing those of particular interest to the trial bar in a monthly column, "In the U.S. District Court."

4.       Since 1994, I have served as a faculty member for the National Institute for Trial Advocacy (NITA), both here in Albuquerque and at the National Programs in Boulder, Colorado.

5.       I am one of two recipients of the 2005 New Mexico Law Review Excellence in Jurisprudence Award. Past honorees include the Honorable Seth Montgomery (2000), the Honorable Mary Walters and past UNM Law School Dean Robert J. Desiderio (2002), UNM Law Professors Michael Browde and Ted Occhialino (2003), and David Stout and Ed Ricco (2004).

6.       I have handled numerous attorneys' fees litigations under 42 U.S.C. § 1988 and related fee statutes. I have been retained in approximately thirty-five cases solely to represent successful plaintiffs' counsel in obtaining a fee award. From early 1989 until its dismissal, I was fee counsel for plaintiffs in <u>Duran v. Johnson</u>, No. CIV 77-721-JC. <u>See</u> <u>Duran v. Carruthers</u>, 885 F.2d 1492 (10th Cir. 1989). I am also fee counsel as well as a member of the litigation team for the plaintiff class in <u>Jackson v. Ft. Stanton Hospital and Training School</u>, 757 F. Supp. 1243 (D.N.M. 1990), *rev'd in part on other grounds*, 964 F.2d 980 (10th Cir. 1992), and was fee counsel as well as a member of

plaintiffs' litigation team in <u>ACLU v. Johnson</u>, 4 F. Supp.2d 1024 and 1029 (D.N.M. 1999), *aff'd*, 194 F.3d 1149 (10th Cir. 2000). I routinely consult on attorneys' fees issues with other members of the civil rights bar and successful plaintiffs' civil rights attorneys in New Mexico and elsewhere in the United States.

7.      I have lectured on attorneys' fees litigation numerous times over the years, at seminars sponsored by the New Mexico Trial Lawyers' Association, the State Bar Association, the Protection and Advocacy System, the Black Lawyers Association, DNA Legal Services and the American Civil Liberties Union of New Mexico, as well as including fees as a topic in presentations to the New Mexico Defense Lawyers Association.

8.      I have been qualified and testified as an expert on attorneys fees in the state and federal courts of New Mexico. In 1995, I testified as to reasonable hourly rates for counsel for the child in a § 1983 claim in the Bernalillo County Children's Court (Hon. Michael Martinez). In 1998, I testified as to reasonable hourly rates for plaintiffs' counsel in a case brought under the New Mexico Mobile Home Protection Act in the Thirteenth Judicial District Court, Valencia County, New Mexico (Hon. John Pope) and also in the New Mexico federal district court (Hon. LeRoy Hansen) on behalf of numerous tribes who filed objections as to the reasonableness of a requested attorneys' fee in a common fund case brought against the United States on behalf of a class consisting of all the Native American tribes in the United States. In 2003, I testified in the Bernalillo County District Court (Hon. Susan Conway) as to the reasonableness of a plaintiff's attorneys' fees based on the contract of representation with the client and the ethical rules regarding fees imposed by the New Mexico Rules of Professional Conduct, NMRA 16-105.

9.      In 2003, I was retained by mutual agreement of counsel for the parties to arbitrate an attorneys' fee dispute in a Voting Rights Act litigation.

3

10.     I have also filed numerous affidavits in both the state and federal courts on behalf of attorneys seeking fees under fee-shifting statutes.

11.     The judges in this federal district have acknowledged my expertise in these areas of the law. See, e.g., Nieto v. Kapoor, No. CIV 96-1225 MV/JHG (Mem. Op. and Order, 6/12/01), at 11 (in setting hourly rates for prevailing plaintiffs' counsel, court acknowledged reliance on affidavit of undersigned counsel, stating "Davis [is] an experienced civil rights attorney in this state, who also has significant experience in attorneys' fees litigation, ... ."); Torrez v. Julian, No. CIV 01-720 BB/WWD (Mem. Op. and Order, 3/11/03), at 4-5.

12.     This Court as well is familiar with and has acknowledged my experience and qualifications in the areas of civil rights law and statutorily awarded attorneys' fees.

13.     Based on my substantial involvement as fee counsel in a number of fee award litigations, and because of federal congressional recognition that civil rights litigation is comparable in complexity to other complex federal litigation such as securities and antitrust cases, I am familiar with contemporary market rates for lawyers in New Mexico involved in litigation of all sorts, including federal securities and antitrust work, complex commercial litigation and civil rights work. I have gained this understanding by a review of various surveys published on the subject, numerous telephone calls to lawyers in firms ranging from sole practitioners to the largest law firms in the State, and my review of New Mexico federal district court opinions on fees issues, which were made available to me in my capacity as United States District Court Opinions Editor for the New Mexico Trial Lawyers Association monthly magazine until December 2003 when after more than fifteen years I gave up that position, and of appellate decisions from this and other jurisdictions involving statutory fee awards.

14.     Since 1983, I have served as a Co-Legal Director of the American Civil Liberties

4

Union of New Mexico.  In this capacity, I am frequently called on by attorneys statewide to consult regarding pending and potential civil rights litigation, including fee award litigation, and federal practice and procedure.  As a Legal Director, I have direct knowledge of the extremely limited and increasingly smaller pool of attorneys statewide willing and able to represent plaintiffs in civil rights litigation with the necessary degree of skill and competence as well as the tenacity required to properly prosecute such complex federal litigation.

15.     It has been my experience that civil rights plaintiffs can rarely, if ever, pay an attorney's hourly rate to pursue an action on his or her behalf, or even pay the substantial costs associated with such complex litigation.

16.     Although I am a sole practitioner, I associate with co-counsel on virtually every civil rights case I accept because of the complexity of the litigation and the nature and the degree of resistance put up by defense counsel who routinely are associated with large firms and who always have substantial litigation support, as well as virtually unlimited economic resources with which to fight the plaintiff's case.

17.     I believe that for a civil rights attorney such as Kevin Martinez, who has 15 years of experience and who has handled numerous civil rights cases, the hourly rate he seeks of $175 is at the low end of the range of rates which are fair and reasonable.  I believe that the reasonable range of hourly rates for Mr. Martinez based on his skill and experience in trial work and civil rights litigation is between $175 and $200 per hour.  I base my judgment in this regard on my personal knowledge of Mr. Martinez' skill and experience as well as on the current prevailing hourly rates in the New Mexico legal community and of hourly rates set by the federal and state district courts in other fee award opinions.

18.     I have known Mr. Martinez since he clerked for the late Hon. Juan Burciaga, United

5

States District Judge, in the early 1990's.  Over the years he has frequently consulted with me on several of his civil rights cases.  He has demonstrated to me in our discussions as well as in the results he has obtained for clients a high degree of commitment to his work as well as the necessary litigation skills and a comprehensive understanding of the complex law of federal civil rights to succeed in prosecuting such cases.

19.     Both Mr. Martinez' years of experience and skill as a trial lawyer entitle him to at least the hourly rate he seeks here, as do his particularized skill and experience in prosecuting civil rights cases, which this Court has had the opportunity to observe first hand.  The significant and substantial success that counsel for the plaintiffs achieved with the verdict in this case also supports the hourly rate Mr. Martinez seeks here.

20.     I am aware of rulings in the New Mexico federal and state district courts which have awarded an hourly rate of $175 - $200 per hour to New Mexico lawyers of skill and experience, i.e., with 15 or more years' experience in areas of particularized federal practice such as civil rights litigation, comparable to Mr. Martinez' qualifications; the same and other rulings also reflect awards based on higher hourly rates higher to more experienced counsel, which by comparison further supports the conclusion that the rate he seeks herein is fair and reasonable and consistent with the market for lawyers of comparable skill and experience.  See, e.g., Hitson v. First Savings Bank, No. CIV 01-0966 LCS/KBM-ACE (Mem. Op. and Order, 1/10/03), at 5-6 (awarding Albuquerque attorney Kathryn Lucero $200 per hour for work as second-chair counsel in civil rights employment case);  Foote v. County of Bernalillo, No. CV-99-4603 (2d Jud. D.Ct., Bernalillo County, N.M.) (Order, 9/17/02) (awarding Albuquerque attorneys Brad Hall and Linda Vanzi $200 and $160 respectively in civil rights due process zoning case); Cochran v. Banyan, Inc., Civ. No. 01-358 JP/RLP - ACE (Mem. Op. and Order, 3/7/02) (awarding Albuquerque attorneys Maureen Sanders and Linda Vanzi $225.00 and $150.00 respectively in Title VII sex discrimination/harassment case);

Harrison v. Eddy Potash, Inc., Civ. No. 94-691 JP/WWD (Mem. Op. and Order, 2/8/02), at 10 (awarding Albuquerque attorney Floyd Wilson $275.00 per hour attorneys' fees in a Title VII hostile work environment case; also awarding second-chair counsel rates of $150 and $200 per hour); Baldonado v. New Mexico State Hwy. and Transp. Dept., No. CIV 99-366 JC/LCS (Order, 12/20/01) (awarding Santa Fe attorneys Richard Rosenstock, Daniel Yohalem and Debbie Poulin $265.00, $225.00 and $175.00 per hour respectively in civil rights employment case); Nieto v. Kapoor, supra (awarding Roswell attorney Tandy Hunt $250.00 per hour in civil rights employment case; also awarding co-counsel Kathryn Hammel and Randy Clark $150.00 per hour); Huerta v. City of Santa Fe, Civ. No. 01-968 RLP/DJS (Mem. Op. and Order, 3/12/03) (awarding Albuquerque attorney Eric Sirotkin $240 in police excessive force case); Harris v. Crespin, No. CIV 99-748 RLP/DJS (Mem. Op. and Order, 2/23/01) (awarding former Albuquerque attorney and now New Mexico Court of Appeals Judge Michael Vigil $225.00 per hour in police misconduct civil rights case).

21.    I charge my full hourly rate to paying clients for travel time and bill and have been paid my full hourly rate for travel time in statutory fee award applications in this district. Recovering fees at the full hourly rate for travel time is particularly important in insuring that competent civil rights lawyers from the major metropolitan areas of Albuquerque and Santa Fe remain willing and able to handle cases for aggrieved citizens from more remote areas of the state where access to local lawyers who are competent to handle such cases is virtually non-existent.

22.    Without lawyers like Mr. Martinez and his co-counsel Joe Romero, citizens in New Mexico would not have any realistic opportunity to obtain the vindication of their federal constitutional rights. Absent the award of fully compensatory attorneys' fees to lawyers like these who prevail on civil rights cases which by their very nature are difficult, complex, time consuming and expensive, and invariably hard fought by the other side, other lawyers will not be attracted to the field or willing to undertake the representation of deserving clients with righteous claims and the

Congressional intent behind the statutory authorization of attorneys fees to prevailing parties in federal civil rights cases will go unfulfilled.

FURTHER AFFIANT SAYETH NAUGHT.


_____
Philip B. Davis


SUBSCRIBED AND SWORN TO before me this 24th day of June, 2005, by Philip B. Davis.


_____
Notary Public


My Commission Expires:


_____

(C:\CF\PBD\martinez.kevin.aff.0605.wpd)

SACRAMENTO JUAREZ
CHART OF COSTS

| BILL DATE | PAYEE | AMOUNT |
|---|---|---|
| 4-13-04 | Enterprise Rent-A-Car - trip to and from Farmington New Mexico | 46.31 |
| 4-21-04 | Flight from Albuquerque to Farmington - Mesa Airlines | 167.00 |
| 4-21-04 | Avis Rent-A-Car - return trip from Farmington New Mexico after depositions. Not billed per billing judgment - statement does not reflect amount charged to credit card. | 0 |
| 5-16-04 to 5-18-04 | Advantage Rent-A-Car for travel to and from Farmington New Mexico | 168.15 |
| 5-17-04 | Holiday Inn Express - Hotel in Farmington, New Mexico | 75.69 |
| 5-17-04 | K-Mart - $15.15 office supplies on road for depositions. No billed per Billing judgment not normally billed to client. | 0 |
| 5-17-04 , 5-18-04 | Courtyard Marriott - Hotel for depositions. | 99.62 |
| 7-12-04 | Great China Super Buffet | 12.29 |
| 7-12-04 | Courtyard Marriott - Hotel for Depositions. | 349.98 |
| 7-13-04 | Courtyard Food | 10.46 |
| 7-13-04 | ATM Petty Cash for meals | 43.00 |
| 7-13-04 | Three Rivers Eatery Food - credit card | 12.10 |

PLANTIFF'S
EXHIBIT

7

| BILL DATE | PAYEE | AMOUNT |
|---|---|---|
| 7-16-04 | Joshua Nabors witness fee | 40.00 |
| 7-16-04 | Amanda Tentler witness fee | 40.00 |
| 7-18-04 | Courtyard Marriott - hotel stay on travel to prepare Junior Juarez for depositions | 128.58 |
| 10-01-04 | Rose's Graphics - copying of discovery to prepare expert notebooks | 680.96 |
| 10-07-04 | Lou Reiter and Associates - flat fee for ongoing consultation, report and education of policing policies and procedures, training and appropriate use of force and services for duration of case. | 5,000.00 |
| 10-13-04 | UPS - bill for mailing to Lou Reiter of documents | 229.17 |
| 12-22-04 | Paul Baca Court Reporting - deposition of Daniel Clifford. | 93.06 |
| 1-17-05 | Rose's Graphics - copying and binding of all documents obtained in case | 1198.91 |
| 2-3-05 | Ronald Liss - flat fee for consultation, review of medical records and testimony at trial | 1800.00 |
| 2-9-05 | San Juan County Sheriff's Office - original color copies of photographs for trial and for expert review | 93.00 |
| 2-15-05 | UPS Mailing to Fenton - accident reconstructionist consulted on "acceleration marks" | 29.02 |

| BILL DATE | PAYEE | AMOUNT |
|-----------|-------|--------|
| 2-22-05 | Jerry Mazon - private investigator - interview of witnesses, location of witnesses, securing witnesses for testimony at trial, costs and expenses associated with travel to Farmington including lodging.[1] | 2,709.39 |
| 2-22-05 | Pulp Faction - payment for copying of discovery documents obtained from Robles pertaining to training | 421.92 |
| 2-24-05 | Hot Shot Courier Service for delivery of documents to Caren Friedman in Santa Fe, New Mexico | 14.10 |
| 2-16-05 | America West - round trip flight to take deposition of McCarthy in California | 394.80 |
| 2-16-05 | Depo of Ron McCarthy airport Parking | 7.00 |
| 2-16-05 | McCarthy and Associates - fee for deposition | 900.00 |
| 2-16-05 | City of Albuquerque Aviation- snack for breakfast | 7.00 |
| 2-23-05 | Accurint - Internet database to locate treating physicians and associate attorney | 8.75 |
| 3-3-05 | Video Tape It - editing of crime scene video tape for presentation to jury | 26.69 |
| 3-3-05 | Perfectly Legal - graphics for demonstrative exhibits to be presented to jury | 341.15 |

---

[1]Jerry Mazon's billing statement is attached to this cost sheet.

| BILL DATE | PAYEE | AMOUNT |
|---|---|---|
| 3-7-05 | 4th and Roma Café - partial working lunch with staff during trial | 1.09 |
| 3-7-05 | 4th and Roma Café - partial working lunch with staff during trial | 20.00 |
| 3-24-05 | Rose's Graphics -(March 5, 2005) copying of exhibits for trial notebooks | 840.52 |
| 3-7-05 | Chase Credit Card reimburse for Hutchings Court Reporting fee  - for deposition and exhibits of Ron McCarthy | 1241.15 |
| 3-18-05 | Caren I. Friedman - Board Certified Appellate Specialist - assistance with jury instructions and with research for arguments on motions in limine at $75.00 per hour.[2] | 2000.16 |
| 3-31-05 | KNOTT LABORATORY - consultant providing information on determining whether marks at gas station were "acceleration marks" provided literature to explain characteristics of acceleration marks, copied to CD rom phonographs of crime scene investigation for purposes of preparing exhibits and power point presentation | 1496.65 |
| 3-31-05 | Paul Baca Professional Court Reporters deposition of Lou Reiter | 294.89 |

---

[2]Caren Friedman's bill is attached to this cost statement.

| BILL DATE | PAYEE | AMOUNT |
|---|---|---|
| 3-31-05 | UPS<br>Package to Roxie Albrecht for consultation on Junior Juarez injuries | 67.35 |
| 5-11-05 | John De La Rosa - Court Reporter for transcript of trial to respond to post trial motions | 500.60 |
| | In house copying, faxes, long distance phone calls, cell phone charges, regular postage are no billed as these are normally absorbed as overhead per billing judgment. | 0 |
| | mileage and fuel no charged per billing judgment - estimated $560.00 | 0 |
| TOTAL: | | 21610.51 |

Jerry L. Mazon - Investigator

**CLIENT:  Kevin Martinez   CASE: Juarez vs. City of Farmington**

| Date | Activity | Miles | Tvl Hours | Inv Hours | Expenses |
|------|----------|-------|-----------|-----------|----------|
| 2/22/2005 | meeting w/Client document review | | | | |
| 22-Feb | database searches re witnesses, prepare memorandum dated 2-23-05 | | | 2.25 | |
| | MVD re Alcon, Tentler and Ohler | | | | 36.00 |
| | Credit Header re Alcon and Ohler | | | | 20.00 |
| 24-Feb | tvl from alb to Farmington. Attempt Mark Bird, Christina Ohler, Peggy Alcon. Meet w/Robert Sandoval. Attmpt Ohler and Troutner. Database searches. Prepare report. Observations and photo's at Mustang | | 2.75 | 5.50 | |
| | dinner - Subway, Farmington | | | | 7.79 |
| 25-Feb | w/Sandoval locate-contact Strickland. Attempt Ohler, Alcon others, telecons, review County Clerk marriage license and property record files . Prepare report. | | | 9.50 | |
| | w/Sandoval Brkfst - Village Inn, Farmington | | | | 13.33 |
| | w/Sandoval Dinner - Sonyas, Farmington | | | | 18.13 |
| 26-Feb | w/Sandoval locate-intv Trentner, Gerber, Wheatley. Attmpt Bird, Ohler, | | | 8.00 | |
| | w/Sandoval Bkfst Denny's, Farmington | | | | 20.40 |
| | w/Sandoval -Gerber Lunch - IHOP, Farmington | | | | 21.73 |
| | Dinner - Applebees, Farmington | | | | 23.22 |
| 27-Feb | w/Sandoval attmpt Bird. Locate-intv Troutner. attempt Cowans re Ohler - neg. Tvl - return to Alb. Observations at Mustang. | 541 | 2.75 | 5.00 | |
| | hotel - Comfort Inn, Farmington | | | | 226.41 |
| 28-Feb | Lunch - Sonyas, Farmington | | | | 8.43 |
| | prepare report | | | 1.50 | |
| **ACTIVITY TOTALS** | | **541** | **5.50** | **29.50** | **$    339.44** |

| | | |
|---|---|---|
| Miles x .36 per mile = | $ | 194.76 |
| Total Tvl hours @ rate of $50 per hour = | $ | 275.00 |
| Total Inv hours @ rate of $60 per hour = | $ | 1,770.00 |
| Sales Tax @ .060625 = | $ | 130.19 |
| Expenses= | $ | 339.44 |

# CAREN I. FRIEDMAN
Attorney at Law                                          Board Certified Appellate Specialist

Invoice submitted to:
Kevin Martinez, Esq.
WALTER K. MARTINEZ LAW OFFICE
219 9th Street N. W.
Albuquerque NM 87102

March 04, 2005

In Reference To:   *DeYapp v. Tracy, No. Civ. 02-452 JP/RLP*

Invoice #   1031

Professional Services

| | | Hours | Amount |
|---|---|---|---|
| 2/23/2005 | Phone conference with K. Martinez; e-mails from/to K. Martinez; read background documents | 1.50 | 112.50 |
| 2/24/2005 | Various e-mails and fax to/from K. Martinez; draft jury instructions; research re: same | 8.30 | 622.50 |
| 2/25/2005 | Phone conference with K. Martinez; read documents pertaining to first motion in limine; e-mail to K. Martinez re: same; reseach re: violation of standard operating procedures and use of less drastic alternatives; begin drafting response outline | 2.30 | 172.50 |
| 2/26/2005 | Continue research; continue drafting response outline | 2.30 | 172.50 |
| 2/27/2005 | Read documents pertaining to second motion in limine; begin research re: admissibility of police procedures expert testimony; continue drafting response outline | 4.60 | 345.00 |
| 2/28/2005 | Finish outlining response to second motion in limine; read documents pertaining to third motion in limine; research re: unrelated criminal conduct of witnesses; continue drafting response outline; check cites; finalize legal memo; e-mail to K. Martinez re: same | 6.10 | 457.50 |
| | For professional services rendered | 25.10 | $1,882.50 |

RECEIVED

BY:_____

7 Avenida Vista Grande #311   Santa Fe, New Mexico 87508
505/466-6418   fax: 505/466-6426   cf@appellatecounsel.info

Kevin Martinez, Esq.                                                          Page      2

|                              | Amount    |
| ---------------------------- | --------- |
| NM 6.25%                      | $117.66   |
| Total amount of this bill     | $2,000.16 |
| Balance due                   | $2,000.16 |