IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CRYSTAL DEYAPP,

    Plaintiff,

vs.                                                                                                               No. Civ. 02-452 JP/RLP

FARMINGTON POLICE OFFICER TAFT TRACY,
and CITY OF FARMINGTON,

    Defendants.

*Consolidated with*

JUNIOR JUAREZ,

    Plaintiff,

vs.                                                                                               No. Civ. 02-453 JP/RLP

FARMINGTON POLICE OFFICER TAFT TRACY,
and CITY OF FARMINGTON,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On May 4, 2005 Defendant Farmington Police Officer Taft Tracy filed a "Motion for Judgment as a Matter of Law or, in the Alternative, New Trial: Vacating the Entire Punitive Damages Award, or, in the Alternative, Reduction or Remittitur of the Punitive Damages Award" (Doc. No. 153). In the motion, Defendant Tracy seeks to vacate the entire punitive damages award against him, claiming that there was insufficient evidence presented at trial to support the jury's award of punitive damages. Failing that, he seeks to reduce the award as unconstitutionally excessive. Alternatively Defendant Tracy seeks *remittitur* of the punitive damages award or a

new trial because the jury's punitive damages award was so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial.  The Court has carefully considered the trial testimony and exhibits, the relevant caselaw, and the arguments of counsel.  Based upon a thorough review, the Court will deny the motion.

   *1. Factual Summary.*  The Court views the facts in the light most favorable to the jury's verdict.  On the evening of July 17, 2001, Defendant Farmington Police Officer Taft Tracy shot Plaintiff Junior Juarez in the head through the driver's side window of the small pickup truck Juarez was driving.  The bullet entered near Junior Juarez' left cheek bone and exited through the right side of his neck.  Next, the bullet entered Plaintiff Crystal DeYapp's left leg where the bullet remains to this day.  Ms. DeYapp was Mr. Juarez's girlfriend and was seated next to him in the passenger seat of the mini-truck.  Both Plaintiffs were teenagers at the time.  Officer Tracy specifically aimed his gun at the driver's head knowing that he could kill the driver by firing the gun at his head.  *Tr. at 181 - 182.*

   This shooting occurred only seconds after Officer Tracy responded to a radio dispatch regarding a fight involving numerous juveniles at a gas station in Farmington, New Mexico.  *Tr. at 199.*  Officer Tracy had no information that weapons were involved in the fight, and he had no information that either Junior Juarez or Crystal DeYapp was involved in the fight or had committed any crime.  *Tr. at 165 - 166, 168.*  When Officer Tracy arrived at the gas station, he observed some of the people scattering away on foot, and he saw one person who seemed injured being helped to his feet by others.  *Tr. at 203.*  As Officer Tracy pulled into the gas station and parked behind Plaintiff Juarez' truck, both Plaintiffs were inside the truck.  Officer Tracy exited

his patrol car intending to investigate the incident that had occurred and who had been involved. *Tr. at 204.*

Officer Tracy then saw an individual later identified as Ronald Foote run towards and stop in front of the truck, with his arms outstretched, palms up, as if to stop the truck. *Tr. at 207.* Tracy surmised that Foote may have seen something and that he wanted the officer to talk to the person in the truck about his involvement in the incident. *Tr. at 207, 172.* Officer Tracy was standing in front of his patrol car and behind the pickup truck, when he saw the truck's reverse lights come on and the truck began to move in reverse. Officer Tracy drew his handgun, moved out to the left side of the truck, and began to move towards the truck. *Tr. at 207-08.* The truck then inched forward slowly towards Foote, barely moving. *Tr. at 346, 69, 83, 111, 152, 350, 390, 405, 413, 412.* Officer Tracy knew that shooting into a closed vehicle at the driver could injure passengers in the vehicle; although Officer Tracy testified that he did not know a passenger was in the truck beside Junior Juarez until after the shooting took place, the jury may have concluded otherwise because of the lighting conditions and the way the officer had approached the truck from the rear. *Tr. at 177-178.*

*2. Jury Trial results.* Two types of claims went to the jury: state law battery claims, and § 1983 claims of excessive force under the Fourth Amendment. The battery claims of both Plaintiffs were brought against Defendants Tracy and the City of Farmington; the excessive force claim was brought only against Defendant Tracy. The jury found in favor of both Plaintiffs on all claims, and awarded punitive damages against Defendant Tracy. The jury awarded Plaintiff Juarez compensatory damages of $86,000 on the battery claim and $47,000 on the excessive force claim, for a total award of compensatory damages for Plaintiff Juarez of $133,000. The jury also

awarded Plaintiff Juarez $300,000 in punitive damages.  The jury awarded Plaintiff DeYapp compensatory damages of $32,000 for battery and $25,000 for excessive force, for a total of $57,000 compensatory damages for Plaintiff DeYapp.  The jury also awarded Plaintiff DeYapp punitive damages in the amount of $200,000.

   *3. Punitive Damages Standards.*  The United States Supreme Court has held that a jury may assess punitive damages in a civil rights case brought under 42 U.S.C. § 1983.  Smith v. Wade, 461 U.S. 30, 35 (1983).  "[R]eckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages."  Smith v. Wade, 461 U.S. at 51.  A jury may award punitive damages only when the defendant's conduct is "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. at 56; Hardeman v. City of Albuquerque, 377 F.3d 1106, 1120-21 (10th Cir. 2004); Youren v. Tintic Sch. Dist., 343 F.3d 1296, 1308 (10th Cir. 2003); Jolivet v. Deland, 966 F.2d 573, 577 (10th Cir. 1992).  "The focus must be on whether the defendant's actions call for deterrence and punishment over and above that provided by compensatory awards."  Hardeman, 377 F.3d at 1121 (*quoting* Youren, 343 F.3d at 1308).

   "An award of punitive damages requires an assessment of [the defendant's] *subjective* statement of mind."  Jolivet, 966 F.2d at 577 (emphasis in original); *see also* Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1269 (10th Cir. 2000) (explaining that the phrase "reckless indifference" "refer[s] not to the egregiousness of the [defendant's] conduct, but rather to the [defendant's] knowledge that [he] may be acting in violation of federal law").

The Court instructed the jury that it could award punitive damages if it found:

> that the conduct of a defendant was malicious, willful, reckless, wanton, or in bad faith . . . Punitive damages are awarded for the limited purposes of punishment and to deter others from the commission of like offenses. The amount of punitive damages must be based on reason and justice taking into account all the circumstances, including the nature of the wrong and such aggravating and mitigating circumstances as may be shown. The amount awarded, if any, must be reasonably related to the actual damages and injury and not disproportionate to the circumstances.

Court's Instr. at 25 (Doc. No. 148). The instruction then goes on to define conduct that is "malicious," "willful," "reckless," and "wanton." Defendant Tracy did not challenge the form of this jury instruction.

*4. Plaintiffs Presented Sufficient Evidence to Support the Award of Punitive Damages.*

The issue of whether there is sufficient evidence to justify an award of punitive damages is a question of law. Marshall v. El Paso Nat. Gas Co., 874 F.2d 1373, 1384 (10th Cir. 1989); Miller v. Cudahy Co., 858 F.2d 1449, 1457 (10th Cir. 1988). As with all challenges to jury verdicts, the court views the evidence presented at trial in the light most favorable to the plaintiff. Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1546 (10th Cir. 1996).

Defendant Tracy argues that the evidence fails to support the imposition of punitive damages against him because the evidence fails to show that the officer's conduct was motivated by evil motive or intent, or that he demonstrated a reckless or callous indifference to the federally protected rights of either Plaintiff. Plaintiffs do not maintain that Officer Tracy was motivated by evil motive or intent. They contend, however, that there is sufficient evidence that he acted with reckless indifference to Plaintiffs' federally protected rights. The evidence at the trial was sufficient to meet the recklessness standard of the test for punitive damages.

5

Defendant Tracy's explanation for using deadly force against Plaintiffs Juarez and DeYapp was that he was attempting to stop Mr. Juarez from using his automobile aggressively, as a deadly weapon to assault Mr. Foote.  According to the testimony of Officer Tracy, Juarez' automobile "was immediately threatening [Foote's] life." *Tr. at 213, ll. 12-14.*  An officer may use deadly force when a suspect uses a vehicle to threaten officers or others with serious bodily harm, but in this case the jury apparently believed that Defendant Tracy's explanation was not credible. Although Mr. Foote had run up towards and was standing in the area in front of Junior Juarez' truck, there was evidence that he was not in danger of being hit by the truck because the truck was moving very slowly, and because Foote could have easily backed away out of the path of the truck.  Defendant argues that this evidence only shows that Officer Tracy made a mistake in judgment about the speed which Juarez' truck would have to travel before he would be legally justified to shoot Juarez in the defense of Foote.  Officer Tracy contends that his mistake in judgment is far removed from the evidence necessary to show that he was indifferent to or showed reckless disregard for the Fourth Amendment rights of Plaintiffs Juarez and DeYapp.

Although evidence that a defendant believed he was acting lawfully is pertinent to the issue of whether he acted with the requisite state of mind to support a punitive damages award, that evidence is not dispositive.  Quigley v. Rosenthal, 327 F.3d 1044, 1070 (10th Cir. 2003).  In awarding punitive damages, the jury rejected the self-serving statements of Defendant Tracy about his subjective belief that Foote was in immediate danger of being run over by Junior Juarez' truck, and there was contradictory evidence suggesting that Tracy's testimony was untrue.  Officer Tracy's trial testimony described his verbal command to the driver of the truck to stop, his loud rapping on the truck's window, the revving of the truck's motor and the squealing of its tires

6

prior to the officer's shooting the driver in the head to get him to stop. All these facts were controverted by other witnesses, and Officer Tracy's own contemporaneous report made the night of the incident did not mention a verbal command or rapping on the truck's window. Moreover, although he was in uniform and driving a marked patrol car, Officer Tracy admitted he had not employed his flashers or used his siren, and that he did not identify himself verbally as a police officer. The jury rejected Officer Tracy's argument that he was justified in using deadly force because Mr. Juarez was using his truck as a deadly weapon. Instead, in awarding punitive damages, the jury believed that Plaintiff Juarez was not using his vehicle to threaten Officer Tracy or Mr. Foote.

Officer Tracy testified that he purposefully fired at the driver's head, not at the vehicle. *Tr. at 181-182*. Even if he did order the driver to stop, the decision to shoot the driver in the head may reasonably have been seen by the jury as reckless. Put another way, the jury could reasonably conclude that Officer Tracy's conduct, together with all the circumstances surrounding the incident, revealed Tracy's subjective reckless or callous indifference to Junior Juarez' federally protected right not to be shot in the head. The same goes for Crystal DeYapp's right not to be shot in the leg.

The jury assessed Officer Tracy's subjective state of mind, and concluded that his conduct did not amount to simply an error in judgment. The jury concluded instead that Officer Tracy was motivated by reckless or callous indifference to Plaintiffs' federally protected right not to be subjected to excessive, deadly force. The evidence was sufficient to prove that Officer Tracy's conduct warranted the imposition of punitive damages against him for both Plaintiffs.

*5. The Jury's Punitive Damages Award Was Not Unconstitutionally Excessive.*

Defendant next argues that the amounts of the punitive damages awarded to Plaintiff DeYapp and to Plaintiff Juarez were unconstitutionally excessive. "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003); Hardeman v. City of Albuquerque, 377 F.3d 1106, 1121 (10th Cir. 2004). Under the constitutional test for excessiveness, a defendant must receive "fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a [jury] may impose." Gore, 517 U.S. at 574; Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1253 (10th Cir. 2000) Three guideposts are instructive in deciding whether the "fair notice" requirement has been met: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Campbell, 538 U.S. at 418 (*citing* Gore, 517 U.S. at 575).

> Reprehensibility is determined by considering whether:
>
> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

Campbell, 538 U.S. at 419. Here, the first two factors weigh heavily in favor of a finding of reprehensibility. The harm to Plaintiffs was primarily physical. Additionally, the conduct showed a reckless disregard of the health and safety of both Plaintiffs. The final factor, too, seems to weigh in Plaintiffs' favor. While there was no evidence of Officer Tracy's intentional malice

towards either Plaintiff, neither was the shooting the result of mere accident. The only factor that weighs against a finding of reprehensibility is that the shooting was an isolated incident. Taken as a whole, Officer Tracy's conduct was reprehensible.

The disparity guidepost also weighs in favor of Plaintiffs. The "actual or potential harm" suffered by the Plaintiffs was exceedingly high. Given that Officer Tracy intentionally fired his gun at the driver's head, the fact that Plaintiff Juarez survived, with so little permanent damage, is astonishing. A gunshot to the head is potentially fatal, or it may cause permanent and profound disability. An emergency room physician testified that Mr. Juarez was "within minutes of death" when he arrived at the hospital. *Tr. at 327, l.1.* Ms. DeYapp's injury, while not as serious, was very painful, and the bullet shot into her leg remains there.

The Supreme Court has stated that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." Campbell, 538 U.S. at 425. Officer Tracy attempts to exaggerate the ratio and downplay the actual harm to the Plaintiffs by parsing the jury's verdict between the state law battery claims and the federal excessive force claims. Thus, Officer Tracy calculates the ratio of punitive damages to compensatory damages as 6.4 to 1 for Plaintiff Juarez[1] and 8 to 1 for Plaintiff DeYapp.[2] It is true that punitive damages are not available under the state battery claim, but that does not mean that the "actual harm" suffered by the Plaintiffs is limited to their compensatory damages on the federal claim for which punitive damages are available. Thus, the ratios are properly calculated as

---

[1] $300,000 punitive damages to $47,000 compensatory damages on the excessive force claim.

[2] $200,000 punitive damages to $25,000 compensatory damages on the excessive force claim.

9

2.3 to 1 for Plaintiff Juarez[3] and 3.5 to 1 for Plaintiff DeYapp.[4]  These disparities between actual harm suffered and the punitive damages award for each Plaintiff are not excessive.  The Campbell case guidepost does not favor Defendant even if it is applied to the more disparate ratios of 6.4 to 1 and 8 to 1.

Finally, Defendant Officer Tracy has failed to show that the punitive damages awarded against him exceed the civil penalties imposed on other police officers for comparable conduct. Both sides have addressed this third Campbell/Gore guidepost by citing cases they claim are comparable in which punitive damages were more or less than the award in this case. Comparisons of damages awarded in other cases are often problematic due to differences in facts, injuries, time of trial, and community estimations of appropriate compensation.  *See* Hoskie v. United States, 666 F.2d 1353, 1358 n. 4 (10th Cir. 1981) (comparing award for pain and suffering in brain injury case with awards in similar cases).  The Court has reviewed the cases cited by both sides in their briefs, as well as numerous other cases involving punitive damages awards in excessive force cases, and finds significant factual and other differences between them and this case.[5]  In any case, however, the $500,000 total punitive damages award here is not so out of line with comparable cases as to implicate due process concerns.

---

[3] $300,000 punitive damages to $133,000 total compensatory damages.

[4] $200,000 punitive damages to $57,000 total compensatory damages.

[5] *See, e.g.* Garrick v. City and County of Denver, 652 F.2d 969 (10th Cir. 1981) ($75,000 punitive damages award upheld); Romanski v. Detroit Entertainment, L.L.C., 428 F.3d 629 (6th Cir. 2005) ($875,000 award reduced to $600,000); McHugh v. Olympia Entertainment, Inc., 37 Fed. Appx. 730 (6th Cir. 2002) (unpublished decision) ($1.2 million award upheld); Gutierrez-Rodriguez v. Cartegena, 882 F.2d 553 (1st Cir. 1989) ($225,000 award upheld); Lee v. Edwards, 101 F.3d 805 (2d Cir. 1996) ($200,000 award reduced to $75,000); DiSorbo v. Hoy, 343 F.3d 172 (2d Cir. 2003) ($1.275 million award reduced to $75,000).

No reduction in the awards of punitive damages is warranted under these constitutional standards.

*6. The Jury's Punitive Damages Award Does Not Shock the Judicial Conscience or Raise an Irresistible Inference that Passion, Prejudice, Corruption or Other Improper Cause Invaded the Trial.* Defendant Officer Tracy alternatively seeks a common law *remittitur*. "In addition to challenging the excessiveness of a punitive damage award constitutionally, a defendant may also make a common law challenge to a punitive damage award . . .." Hardeman, 377 F.3d at 1121. The court has the authority under the common law to remit a punitive damages award that is "so excessive . . . as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial." Hardeman, 377 F.3d at 1121-22 (*quoting* Telecor Communications, Inc. v. Southwestern Bell, 305 F.3d 1224, 1143 (10th Cir. 2002)). In his *remittitur* argument, Defendant Officer Tracy relies on the same factual basis as set forth in his arguments that the punitive damages awards were not supported by sufficient evidence, and that the punitive damages awards were unconstitutionally excessive. The Court has rejected both of those arguments. In addition, this Court's judicial conscience is not shocked at the amounts of the punitive damages the jury awarded. The jury was fully aware that the juvenile Plaintiffs possibly had been involved in the reported fight to which Officer Tracy was responding, and that Officer Tracy was taking actions in the line of duty. These factors are more likely to influence a jury to sympathize with the defense than to be improperly inflamed against the defendant. Despite this, the jury sent a message that even officers of the law cannot get away with such reckless and irresponsible behavior as was demonstrated by Officer Tracy. Having been present during presentation of all the evidence at the trial, I believe that the punitive damages

11

awards of $300,000 and $200,000 in favor of the two Plaintiffs do not infer that any improper cause invaded the trial.

   THEREFORE, IT IS ORDERED that Defendant Tracy's Motion for Judgment as a Matter of Law or, in the Alternative, New Trial:  Vacating the Entire Punitive Damages Award, or, in the Alternative, Reduction or Remittitur of the Punitive Damages Award (Doc. No. 153) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE