# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

CRYSTAL DEYAPP,

    Plaintiff,

vs.                                                            No. Civ. 02-452 JP/RLP

FARMINGTON POLICE OFFICER TAFT TRACY,
and CITY OF FARMINGTON,

    Defendants.

*Consolidated with*

JUNIOR JUAREZ,

    Plaintiff,

vs.                                                             No. Civ. 02-453 JP/RLP

FARMINGTON POLICE OFFICER TAFT TRACY,
and CITY OF FARMINGTON,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## AWARDING ATTORNEY FEES AND EXPENSES

    On April 27, 2005 the Court entered Judgment of $257,000 for Plaintiff Crystal DeYapp and $433,000 for Plaintiff Junior Juarez (Doc. No. 152). The Judgment was based upon a jury verdict awarding Plaintiffs compensatory and punitive damages. Plaintiffs filed three motions for attorneys' fees and expenses in accordance with 42 U.S.C. § 1988.[1] Attorney Kevin Martinez

---

[1] On June 28, 2005 Kevin Martinez filed Plaintiff's Motion for Attorneys' Fees and Expenses (Doc. No. 157). On June 30, 2005 Joe Romero filed Plaintiffs' Motion for Attorneys' Fees and Expenses (Doc. No. 160). On July 7, 2005 Ronald R. Adamson filed a Motion and Memorandum in Support of His Request for Attorneys' Fees (Doc. No. 163). In this litigation, attorneys Martinez and Adamson represented Plaintiff Junior Juarez, and attorney Romero represented Plaintiff Crystal DeYapp.

seeks an award of his fees and expenses totaling $59,757.62 through February 2005.[2]  Attorney Ronald Adamson seeks an award of his fees totaling $14,044.03.  Attorney Joe Romero seeks an award of his fees and expenses totaling $122,259.12.  The motions will be granted, in part.

**Background.**  On July 17, 2001 Farmington Police Officer Taft Tracy responded to a radio dispatch concerning a juvenile fight at a gas station in Farmington.  Shortly after he arrived at the scene, Officer Tracy shot Plaintiff Junior Juarez, then a teenager, in the head as Juarez sat in the driver's seat of his pickup truck.  The bullet exited the right side of Mr. Juarez' neck and entered Ms. DeYapp's left thigh as she sat in the passenger seat of Juarez' truck.  At trial each Plaintiff presented three types of claims:  one for a federal constitutional violation of the Fourth Amendment right to be free from the use of excessive force under 42 U.S.C. § 1983; one for battery under state law; and one for punitive damages based on the gravity of the conduct involved.[3]  The jury awarded damages for each Plaintiff based upon each type of claim.  The judgment awarded to Plaintiffs against Defendant Tracy under § 1983 gives rise to the attorneys' fees requests.[4]

Counsel for Plaintiffs exercised good judgment by streamlining their case -- they voluntarily agreed to dismiss some claims and to drop others that were overly complex or

---

[2] Mr. Martinez states that he will seek additional fees and expenses for preparing a reply to the contested attorney's fee motion, and for defending against post-trial motions filed by Defendant Taft Tracy.

[3] Long before trial, on December 7, 2004, Plaintiffs voluntarily withdrew their § 1983 and state law claims for supervisory and municipal liability against Defendants Farmington Police Chief Mark McCloskey and the City of Farmington (Doc. No. 101).  The Court dismissed certain of Plaintiffs' claims, without much opposition by Plaintiffs (Doc. Nos. 75, 76).  At the final pre-trial conference just before trial, Plaintiffs voluntarily dismissed their state law claims for false arrest and false imprisonment (Doc. No. 152).

[4] Although all claims against Defendant McCloskey were dismissed, Defendant City of Farmington remained in the case on a *respondeat superior* theory under Plaintiffs' state law battery claims.

extraneous.  Defendants made no offer to settle the claims of Plaintiff Juarez.  Defendants solicited an offer of settlement from Plaintiff DeYapp, but after Plaintiff DeYapp transmitted a settlement offer, Defendants did not respond.  The parties litigated the case aggressively, albeit in an amicable and professional manner.  Former counsel for Defendants, Luis Robles, who handled the case through trial, specializes in the defense of excessive force cases; he has extensive experience in litigating such cases.

Although the incident itself was brief, the factual investigation of the case was necessarily complicated.  There were numerous eyewitnesses to the shooting, and a large number of police officers filed written reports detailing interviews of the witnesses and other portions of the police investigation.  The parties engaged in extensive pre-trial discovery.  The case was also complex from a legal standpoint.  There was an extensive pre-trial motion practice, including several motions to dismiss and/or for summary judgment, and several motions *in limine*.  The parties complied with the Court's requests to agree on as many issues as possible, such as trial exhibits and jury instructions.  Jury selection and trial lasted four days, and the trial proceeded relatively smoothly.  As aptly stated by Mr. Martinez, "[w]hile the trial itself may have appeared straightforward, the work in making it appear that way happens before the attorneys walk into the courthouse on the first day of trial."  Reply Br. at 6.

The results obtained by Plaintiffs in their civil rights claims against Defendant Tracy were excellent.  They were awarded both compensatory and punitive damages for these claims totaling $572,000.00.[5]

---

[5] This is in addition to the amounts Plaintiffs were awarded as compensatory damages on their state law battery claims against both Defendants Tracy and the City of Farmington:  $86,000.00 for Plaintiff Juarez and $32,000.00 for Plaintiff DeYapp.

**Standards for Awarding Attorneys' Fees**.  Under 42 U.S.C. § 1988 reasonable attorneys' fees are ordinarily awarded to a prevailing party in civil rights litigation.  Robinson v. City of Edmond, 160 F.3d 1275, 1280 (10th Cir. 1998).  Reasonable fees are calculated using the lodestar method, whereby the number of attorney hours reasonably expended in the litigation is multiplied by a reasonable hourly rate.  Id. at 1281.  The product of the lodestar calculation -- the reasonable hours times a reasonable rate -- is strongly presumed to represent a reasonable fee.  Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986).

The first step in calculating the lodestar is to determine the number of hours reasonably spent by counsel for the party seeking fees.  Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998).

> [The] reasonableness inquiry is controlled by the overriding consideration of whether the attorney's hours were necessary under the circumstances.  The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.  A district court should approach this reasonableness inquiry much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients. . ..

Robinson, 160 F.3d at 1281 (internal quotations and citations omitted).  Factors that may impact reasonableness of the number of hours spent include the complexity of the case, the level of opposition encountered, duplication of effort by multiple attorneys, adequacy of documentation of hours spent, and the results obtained.  *See* Hensley v. Eckerhart, 461 U.S. 424, 434-36 (1983); Ramos v. Lamm, 713 F.2d 546, 553-54 (10th Cir. 1983), *overruled on other grounds,* Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 725 (1987).

The next step involves the Court determining a reasonable hourly billing rate for each

4

lawyer based upon the norm for lawyers with comparable experience, skill and reputation "in the area in which the court sits . . .." Ramos, 713 F.2d at 555. The lodestar amount is the product of multiplying a reasonable number of hours by a reasonable rate.

**Discussion.**  Defendant Taft Tracy[6] does not dispute the fact that Plaintiffs were prevailing parties, but he does contend that some of the attorney hours should be reduced. Defendant argues that three attorneys were not required to represent the two Plaintiffs and this led to redundancy, and that the issues in the case were not novel or complex factually or legally. Defendant also asserts that the suit did not require counsel from outside of Farmington, and that the hourly rates claimed are not appropriate for the Farmington area.

I have reviewed the three fee applications for reasonableness as to the number of hours expended, paying special attention to the possibility of duplication. In general, I find that the attorneys exercised appropriate billing judgment, resulting in minimal duplication of effort. However, there are certain aspects of the fee requests that require me to reduce the number of hours to be included in the lodestar calculation.

*Timeliness.*  Defendant contends that Plaintiff Juarez' motion for the attorney's fees of Mr. Adamson should be denied because the motion was untimely. A local rule requires that a motion for attorney's fees be filed within 30 days after entry of judgment. D.N.M.LR-Civ. 54.5(a). The Court twice extended the deadline for filing motions for attorney's fees (Doc. Nos. 155, 161); the latest extension was to July 1, 2005. Mr. Adamson filed his motion on July 7, 2005. However, Mr. Adamson asserts that he asked his paralegal to contact former defense

---

[6] Final Judgment was entered against both Defendant Taft Tracy and Defendant City of Farmington. However, only Defendant Tracy responded to the motions for attorneys' fees because only he is liable under the § 1983 excessive force claims that give rise to attorneys' fees under § 1988.

counsel Luis Robles to request an additional week in which to file his fee petition, and that Mr. Robles granted that request. Pl. Reply, Ex. 1, Aff. Cummings ¶¶ 4-6 at 1-2. This does not appear to be disputed. Therefore Mr. Adamson's motion was filed timely.

*Number of attorneys.* Defendant next argues that the two Plaintiffs, "whose interests were never adverse and whose claims were virtually identical," Def. Resp. at 3, did not need three attorneys to represent them. According to Defendant, there was duplication in the two cases even before the cases were consolidated. Under the circumstances, Defendant claims that it is unlikely that three separate attorneys could have justified billing these two clients.

Plaintiffs respond that it was appropriate for each Plaintiff to have separate counsel, and that it was not excessive for a total of three attorneys to be involved. The Court agrees that it was appropriate for the Plaintiffs to have separate counsel even though their claims were closely related and were based upon the same incident. Mr. Adamson's role as the Farmington attorney was to maintain close contact with the Plaintiffs. This was different from the role of Mr. Martinez, who began working on the case much later and who functioned as litigation and trial counsel. Because a total of three attorneys seek fees for their work on the case, I am mindful of the potential for duplicative billings. I have reviewed the three sets of billings with this in mind, and have relied on Defendant to point out specific instances of duplication.

*Complexity.* Defendant acknowledges that a case involving novel legal theories, difficult legal and factual issues, stern opposition, and other complexities might justify having more than one attorney work on the case. Current defense counsel, Ruth Fuess, who entered her appearance only after the trial was over, characterizes this case as "relatively simple." Def. Resp. at 4. Mr. Robles, however, who represented Defendants throughout the case until after the trial, litigated

6

the case aggressively and thoroughly. He filed numerous pre-trail motions, engaged experts, and otherwise used his considerable legal skills to defend against Plaintiffs' claims. The individual Defendants'[7] assertions in pretrial motions of the defense of qualified immunity as to the constitutional claims, in which Defendants argued that the law was not clearly established, belie the current contention that the case was simple. Moreover, Defendant Tracy has failed to reveal the number of hours billed by the defense attorneys to support his assertion that this was a simple case that did not require the number of hours billed by Plaintiffs' counsel.

*Out-of-town Counsel.* Defendant objects that two of the three attorneys are from outside the Farmington area. I find this objection curious because Defendants were represented throughout the litigation by Luis Robles, an Albuquerque attorney who is a member of an Albuquerque law firm. Current counsel, Ruth Fuess, is also an attorney in an Albuquerque law firm. Defendant objects to the time and expense incurred by the Plaintiffs' Albuquerque attorneys to travel to Farmington for client meetings, investigation, and depositions. However, if Plaintiffs had been represented by Farmington counsel, there would have been many such costs for travel to Albuquerque, where the Court sits and the trial was held. This case does not involve out-of-state attorneys. Rather, Plaintiffs' attorneys practice "in the area in which the court sits . . .." Ramos, 713 F.2d at 555. Finally, Plaintiff Juarez was treated for his head and facial injuries in an Albuquerque hospital, and his medical records and witnesses regarding his medical treatment were from Albuquerque, as were the defense medical witnesses. Plaintiffs' attorneys are entitled to recover for their travel time and travel expenses to and from Farmington.

---

[7] The other individual Defendant, Chief McCloskey, was dismissed by stipulation of the parties. See footnotes 3 and 4, *supra*.

*Hourly Rates.* Plaintiffs have demonstrated that the hourly rates they seek for each attorney are reasonable. Defendant argues that Plaintiffs have not demonstrated that the rates sought are reasonable in the Farmington area where the shooting occurred. Hourly rates must reflect the "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984); Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995). Because pre-trial hearings and the trial took place in Albuquerque, there is no need to apply Farmington rates. Even so, Plaintiffs have sufficiently demonstrated that the rates they seek are also reasonable in the Farmington area.

*Mr. Ronald R. Adamson* was counsel of record for Plaintiff Junior Juarez. He began working on the case shortly after the shooting. He and Mr. Romero (who was counsel of record for Plaintiff Crystal DeYapp) met with the clients and/or their parents two days after the incident. Mr. Adamson practices law in Farmington. His practice consists mostly of criminal defense work, for which he charges $200 per hour, or less if the client is indigent or semi-indigent and unable to pay the full fee. He also has experience in civil cases. He has been a member of the New Mexico bar since 1981. He seeks an hourly rate of $130 for his work on this case.

The substantive work Mr. Adamson performed up until his last time sheet entry of November 30, 2004[8] appears to have consisted mainly of maintaining close client contact with both Plaintiffs, who also live in Farmington. However, I find that many of the entries in Mr. Adamson's time sheets lack sufficient detail to allow me to determine whether the time for which he billed was reasonably expended. For example, numerous entries only note that he reviewed

---

[8] Attorney Martinez entered his appearance on behalf of Plaintiff Juarez on December 7, 2004, but his time sheets indicate that he began working on the case in March 2004, shortly before the beginning round of depositions.

letters prepared by others. Other entries appear to represent unnecessary duplication; for example Mr. Adamson reviewed motion briefs prepared by Mr. Romero, and Mr. Adamson attended a deposition on April 19, 2004 that was also attended by both Mr. Martinez and Mr. Romero. Compounding the problem is that Mr. Adamson's brief and affidavit fail to explain fully his role in the case. Mr. Adamson states that he assisted in identifying witnesses and evidence at an early stage, and that he kept Plaintiffs abreast of all developments so they would stay deeply involved in the case. He also alludes to doing work related to potential criminal charges against Plaintiff Juarez, but it is impossible for me to identify such work from his time sheets. Although his time sheets indicate Mr. Adamson may have had some role in answering interrogatories, and in locating or working with expert witnesses, that work is not explained in his affidavit or briefs.

     Mr. Adamson seeks compensation for a total of 101.2 hours. However, after careful review of his time sheets, I have determined that only 58 of those hours were reasonably expended, given that two other attorneys performed most of the substantive work and that Mr. Adamson's time sheets lack sufficient detail.

     Mr. Adamson's requested hourly rate of $130 is reasonable, based on his experience and skill, and this rate is not contested by Defendant.

     *Mr. Joe M. Romero Jr.*'s role was the most comprehensive. He and Mr. Adamson met with the clients and their parents on July 19, 2001 (two days after the incident), and Mr. Romero carried the case through to trial and beyond. Mr. Romero's work included meetings with clients, preparation and filing of the complaint and amended complaint, investigation and case planning, compiling medical records, responding to dispositive motions for dismissal and for summary judgment, participation in all aspects of the discovery process, preparation of a settlement offer

9

for Plaintiff DeYapp, filing and responding to motions *in limine*, trial preparation, four days of jury selection and trial, responding to post-trial motions, and preparation of the fee petition.  Mr. Romero billed for his travel time for six trips to Farmington for client meetings and depositions, and for a trip to Florida for a deposition.  Mr. Romero's time sheets for the most part are detailed and specific.  In addition, his time sheets indicate that he exercised appropriate billing judgment in not charging for significant portions of his work, up to 30% of the time he actually spent on this case.  A comparison of his time sheets and those of Mr. Martinez indicate the two attorneys attempted to eliminate duplicative billing.  Although both attorneys attended some of the depositions, generally they did not double-charge for their time. One exception has been revealed by Defendant:  on April 19, 2004 all three attorneys billed for attending the deposition of Virginia Jim in Farmington.  I have already reduced Mr. Adamson's hours for attending that deposition.  Given that this was the first deposition taken in the case, I find it was reasonable for both Mr. Martinez and Mr. Romero to attend this deposition and bill for it.

     Defendant points to another duplication in billing between Mr. Romero and Mr. Martinez, on June 23, 2004.  Both attorneys billed 2.7 hours for a strategy session and planning to divide trial preparation work, including gathering of exhibits.  Several entries in Mr. Romero's time sheets for that date were not charged, including numerous telephone calls between counsel.  I find it was reasonable for both attorneys to bill for this session because Mr. Romero otherwise exercised appropriate billing judgment, and undoubtedly the session led to more efficiency in the division of labor between counsel for the upcoming depositions and trial.  However, I find some of Mr. Romero's time sheet entries to be insufficiently detailed to determine what work was performed and whether the time was reasonably expended.  Many of these have not been charged,

10

but others have been.  The latter total approximately 10 hours.

     Mr. Romero has practiced law in New Mexico for 20 years.  His customary hourly rate is $225.  He has handled several civil rights cases, focusing on police officer and jail employee misconduct.  Before entering private practice in 1994, Mr. Romero served as an Assistant United States Attorney for seven years.  He has prosecuted or defended hundreds of criminal cases.

     Mr. Romero seeks compensation for his time totaling 502.9 hours.  I find that all but 10 hours were reasonably expended on this case.  Mr. Romero seeks compensation at the hourly rate of $225.  Given his experience, skill and reputation, as well as his major role in the case, this is a reasonable rate.

     Mr. Romero also seeks compensation for the work of an independent paralegal he and Mr. Adamson retained, Mr. Brandon Cummings.  Mr. Cummings spent a total of 3.2 hours performing legal research on three motions in limine, and for witness preparation.  Defendant does not object to this time, and I find it was reasonably expended.  The hourly rate Mr. Cummings charged was $85, which I find is reasonable.

     *Mr. Kevin Martinez* began working on the case in March 2004, shortly before the first depositions were taken.  He became counsel of record for Plaintiff Junior Juarez by entering his appearance on December 7, 2004, and he continued as co-counsel with Mr. Romero in the consolidated cases throughout the trial, playing a major role in the trial preparation and trial.  His role consisted of attending and taking numerous depositions, organizing documents and exhibits, conducting legal research on and drafting a response to a summary judgment motion, drafting the pretrial order, preparing summaries of deposition transcripts, performing other trial preparation such as work on witness and exhibit lists, preparing proposed jury instructions, gathering medical

records to prove Plaintiff Juarez' damages, communicating with clients, counsel and the Court, participating in the trial, preparing the Final Judgment, and preparing his fee petition.

Mr. Martinez has been a member of the New Mexico bar since 1990. He served for two years as a federal judicial law clerk to the late Honorable Juan Burciaga, and began practicing law in 1992. He has appeared in state and federal courts in New Mexico in a wide variety of cases, including civil rights cases.

Mr. Martinez exercised billing judgment in not charging for 48 hours spent on his preparation of a 34-page response to a summary judgment motion, with 82 pages of exhibits. His response to the motion successfully avoided a finding of qualified immunity for Defendant Tracy and paved the way for Plaintiffs' judgment on the civil rights claims. Mr. Martinez also exercised billing judgment in not charging for deposition time that was charged by Mr. Romero, with the exception noted above, and in not charging for several hours of trial preparation time.

Defendant contends that Mr. Martinez should not have charged for 5.4 hours of legal research he performed on October 11, 2004 because it related to claims for unreasonable searches and seizure that Plaintiffs later dismissed. However that research was inextricably intertwined with other issues in shooting cases such as the use of excessive force and probable cause. Additionally, Mr. Martinez generously reduced his hours for much of the time he spent preparing the brief that was successful in opposing summary judgment.

Mr. Martinez seeks compensation for a total of 204.2 hours. I find that all this time was reasonably expended in the case, given the overly generous billing judgment Mr. Martinez exercised. Mr. Martinez seeks an hourly rate of $175, which is reasonable based on his experience, skill and reputation.

*Adjustments to Lodestar.*  Defendant argues that on December 7, 2004 the parties entered into a Stipulation Dismissing Plaintiffs' Municipal Liability, Failure to Train, and Supervisory Liability Claims which included dismissal of all federal supervisory claims against Chief McCloskey, and federal and state law municipal liability claims against the City of Farmington and Chief McCloskey.  Doc. No. 101.  The stipulation included a clause that each party would bear its own attorneys fees and costs "related to this Dismissal."  Id., ¶ 3 at 2.  Defendant states that the time sheets do not indicate that fees related those dismissed claims were removed.  Plaintiffs counter that they agreed to dismiss the municipal and supervisory claims in order to streamline a complicated case, which inured to the benefit of all parties and the Court.  Also, Plaintiffs' damages would not have been any greater if they had pursued and prevailed on these claims.  Defendant Tracy does not identify any time billed by Plaintiffs' attorneys that was spent exclusively on the supervisory and municipal claims, or on the dismissal itself.  The Court notes that Mr. Romero did not charge for the time he spent on November 29 and 30, 2004 regarding the Stipulation.  Mr. Martinez did charge a total of .5 hours for his work on drafting the Stipulation, and so I will deduct $89.50 from his lodestar.

Defendant makes a similar argument with respect to other claims dismissed by Court Order (Doc. Nos. 75, 76), or by the parties' stipulation on the eve of trial (Doc. No. 152).  But those claims are indisputably intertwined with the ones on which Plaintiffs prevailed.  Where claims are "interrelated and the plaintiffs secured all the relief they requested, it is not necessary that the court be able to break down the hours between the various claims."  Robinson v. City of Edmond, 160 F.3d at 1285 n.10.  That is the case here.

Defendant also argues that Plaintiffs have not established that the litigation in which they

13

prevailed advanced any public purpose. I disagree. It is not necessary, as Defendant asserts, for a plaintiff to prevail on policy and procedure claims under § 1983 in order to advance an important public purpose in a civil rights case involving the use of deadly force by a police officer. Plaintiffs significantly vindicated their right to be free from the use of deadly force under the circumstances of the incident of July 17, 2001.

### Calculation of Reasonable Attorneys' Fees (Lodestar)

The Court calculates reasonable attorneys' fees as follows:

| Attorney | Hours | x | Rate | = | Fee |
|---|---|---|---|---|---|
| Ronald Adamson | 58 hrs. (101.2 requested - 43.2) | x | $130 | = | $7,540.00 |
| Joe Romero | 492.9 hrs. (502.9 requested - 10) | x | $225 | = | $110,902.50 |
| Brandon Cummings (paralegal) | 3.2 hrs. | x | $85 | = | $272.00 |
| Kevin Martinez | 204.2 hrs. (reduced by .5 hr. spent on Stipulation of Dismissal | x | $175 | = | $35,735.00<br>-  $87.50) |
| | | | | = | $35,647.50 |
| Subtotal | | | | | $154,362.00 |
| + Gross Receipts Tax (6.75% of subtotal) | | | | | $10,419.44 |
| Total Attorneys' Fees and Taxes: | | | | | $164,781.44 |

### Expenses and Costs

Having determined reasonable attorneys' fees, I turn now to the question of expenses and costs. On March 29, 2006, applying the local rules of this Court, the Clerk settled costs for Plaintiff Juarez by allowing costs of $1,288.36 for two witness fees and for trial exhibit notebooks

14

for the jury, and by disallowing all other requested costs for travel expenses, expert witness fees, investigator fees, delivery fees, copying costs, deposition and trial transcript costs, and so forth (Doc. No. 182). On the same day the Clerk settled costs for Plaintiff DeYapp by allowing costs of $378.47 for filing the complaint, service of process, and copying, and by disallowing the requested cost of $800.00 for a medical examination by Dr. Weber (Doc. No. 183).

Under 42 U.S.C. § 1988, litigation expenses incurred in civil rights cases that are normally itemized and billed in addition to the attorney's hourly rate may be awarded as part of attorneys' fees. *See* Brown v. Gray, 227 F.3d 1278, 1297-98 (10th Cir. 2000); Bee v. Greaves, 910 F.2d 686, 690 (1990); Ramos v. Lamm, 713 F.2d at 559. Defendant did not challenge any of the costs and expenses sought under the provisions of § 1988.[9]

Mr. Romero seeks reimbursement of expenses totaling $1,178.47 for a court filing fee, service of subpoenas, medical records fees, and a client medical examination. Mr. Martinez seeks reimbursement of expenses totaling $21,610.51 for travel expenses, witness fees, outside copy expenses and other exhibit-related expenses, the services of experts, deposition fees, the fees of an investigator, and the fees of attorney Caren Friedman who assisted in preparation of jury instructions and research on the motions *in limine*. Defendant does not object to these expenses. I find they are reasonable, and they represent costs that are normally billed to clients separately

---

[9] Defendant Tracy filed an Application For Review of Clerk's Order Settling Costs for Junior Juarez (Doc. No. 184) in which he disputed the Clerk's allowance of $1,208.36 for the cost of jury notebooks. The notebooks contained copies of trial exhibits for each juror. Defendant's objection was based on D.N.M.LR-Civ. 54.2(e), which does not provide for recovery of costs for copying exhibits unless requested by the Court or admitted into evidence in place of the original. The Clerk's review was based on the Court's local rule governing costs, which applies the restrictive principles of Rule 54(d) of the Federal Rules of Civil Procedure and of 28 U.S.C. § 1920. However, Plaintiffs' applications for litigation expenses are also based on 42 U.S.C. § 1988, which in civil rights cases allows recovery of expenses as part of attorneys' fees if those expenses are normally itemized and billed in addition to the attorney's hourly rate. Therefore I will deny Defendant's application for review and allow the Clerk's Order Settling costs to stand.

from the attorney's hourly fee.  I find that Plaintiffs are entitled to recover all of their claimed expenses.  In order to avoid duplication, I will deduct from the award of expenses under § 1988 those costs already awarded by the Clerk.

| | | |
|---|---|---|
| Kevin Martinez's expenses and costs | (21,610.51 - 1,288.36) | $20,322.15 |
| Joe Romero's expenses and costs | (1,178.47 - 378.47) | $800.00 |
| Total Expenses and Costs | | $21,122.15 |
| **Total Fees, Taxes and Expenses** | | **$185,903.59** |

THEREFORE, IT IS ORDERED that

Plaintiffs' motions for attorneys' fees and expenses (Doc. Nos. 157, 160, 163) are granted, in part.  Plaintiffs are awarded a total of $185,903.59 as attorneys' fees, taxes and expenses under 42 U.S.C. § 1988.

Defendant's Application For Review of Clerk's Order Settling Costs for Junior Juarez (Doc. No. 184) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE